Clarence Baum v. City of St. Louis, a Municipal Corporation; James A. Waechter, Joseph W. Hannauer, Charles L. Moore, Stephan M. Wagner, Election Commissioners of the City of St. Louis; Henry Menne, Treasurer of the City of St. Louis and Louis Nolte, Comptroller of the City of St. Louis, Defendants, Claud C. Cox, F. J. Dieterle, William Gray, Mrs. Catherine O'Tolle and Max W. Soffer, Appellants.—123 S. W. (2d) 48.

Division Two, December 20, 1938.

*Robert Kratky* and *Joseph Nessenfeld* for appellants.

*Hiram N. Moore, Rene J. Lusser* and *Emmett Golden* for respondent.

WESTHUES, C.—This suit was filed by respondent, plaintiff below, as a citizen and taxpayer of the city of St. Louis, against the city, the election commissioners of the city and the treasurer and comptroller of the city to enjoin the holding of an election threatened to be called for the purpose of voting on two ordinances proposed under the initiative provisions of the city charter. A number of

taxpayers of said city filed a petition seeking to intervene in the suit as defendants. This petition was granted. The trial court entered a judgment in plaintiff's favor enjoining the defendants, election commissioners, from calling an election, and the treasurer and comptroller from paying expenses to be incurred in the holding of such an election. From this judgment the intervening defendants appealed.

The purpose of the two ordinances proposed may be best stated by quoting the titles thereof. The title to Ordinance (a) reads as follows:

" 'An ordinance providing for the acquisition of a five cent fare municipal mass transportation system, estimating the cost of such system at twenty-five million dollars, authorizing the issuance of public utility revenue bonds in the amount of twenty-five million dollars to pay therefor, secured by mortgage on such system, together with an appropriation to pay for such system.' "

The title to Ordinance (b) read as follows:

" 'An ordinance calling and providing for an election on May 22, 1936, to vote on the proposition to issue public utility revenue bonds in the amount of twenty-five million dollars to pay for the acquisition of a five cent fare municipal mass transportation system.' "

The petition charged that the election commissioners were threatening to call an election pursuant to initiative petitions which had been filed with the city officials; that an expense of $8,000 had been incurred and a further expense of $65,000 was intended to be incurred in checking the signatures to the initiative petitions. It was also alleged that an election on the proposals would cost the taxpayers of said city in excess of $200,000. The petition then charged that the proposed ordinances were void because of Sections 1 and 2, Article 22, of the city charter. Section 1 reads as follows:

"Section 1. Recommendation by board of public service ordinances public work or improvement.—No ordinance for public work or improvements of any kind, or repairs thereof, shall be adopted, unless prepared and recommended by the board of public service with an estimate of the cost endorsed thereon."

It was admitted that the Board of Public Service had not recommended either of the proposed ordinances. Appellants contend that the restrictions contained in the section above quoted do not apply when the people of the city desire to enact an ordinance under the initiative provisions of the charter, Section 1 of which reads as follows:

"Ordinances proposed and adopted by initiative.—The people shall have power, at their option, to propose ordinances including ordinances proposing amendments to this charter, and to adopt the

same at the polls, with the same effect as if adopted by the board of aldermen and approved by the mayor, such power being known as the initiative. It shall be exercised as hereinafter provided, subject to the provisions of this charter.''

It has been definitely decided by this court that the Board of Aldermen of the city of St. Louis does not have authority to adopt any ordinance which may come within the provisions of Section 1, Article 22, supra, unless the same has been recommended by the Board of Public Service. In the case of American Tobacco Co. v. Mo. Pac. Railroad Co., 247 Mo. 374, 157 S. W. 502, this court en banc held that the Board of Aldermen could not even adopt an ordinance for a public improvement, which improvement had been recommended by the Board of Public Service, where the plans in the ordinance of the Board of Aldermen were at variance with the ordinance and recommendations prepared by the Board of Public Service. It was there decided that the Board of Aldermen could not, under any circumstances, pass such ordinances unless recommended by that board. The question in this case then is, do the restrictions in Section 1, Article 22, apply when such ordinances are proposed under the initiative provisions of the charter? We think so. It will be noted that the restrictions are all-inclusive. No exceptions are made. The section reads:

''No ordinance . . . shall be adopted, unless prepared and recommended by the board. . . .''

The initiative provisions of Section 1, Article 5, are not all-inclusive. The section reads:

''The people shall have power, . . . to propose ordinances . . . and to adopt the same at the polls, with the same effect as if adopted by the board of aldermen and approved by the mayor, . . . *subject to the provisions of this charter*.'' (Italics ours.)

We find in the adjudicated cases good reasons why the citizens of a large city place such restrictions in their charter. For example, in the American Tobacco case, supra, this court made the following comments which will be found in 247 Mo. 374, l. c. 530, 157 S. W. 502, l. c. 553:

''In my opinion, no intelligent man, be he lawyer or layman, can read those provisions of the charter of the city of St. Louis, in connection with the general provisions thereof regarding public improvements, and come to any conclusion, except that it was the design of the framers thereof that every kind and character of the public work or improvement, or the reconstruction and repairs thereof, should be under the supervision and control of the board of public improvements, and that no work or improvements of that character or any contract for the doing of the same should be valid or binding without

authorized by ordinance recommended by said board, after faithfully complying with all charter requirements prerequisite to its action in the premises. The clear purpose of the charter is and was to provide a wise, comprehensive, durable, and symmetrical system of public improvements, and create a board of public works, and place it in charge thereof, with power and authority to see that all public work desired by the City should conform to that system. The object of placing the system of improvement in the hands of the board was to secure to the public, and the owners of the property affected by the work, the benefit of the knowledge, skill, and unbiased judgment of a body of scientific men, unaffected by local influences, incident to all public improvements. [State v. Butler, 178 Mo. 278, 77 S. W. 560; Bambrick v. Campbell, 37 Mo. App. 460.]''

Again in State ex rel. Belte v. City of St. Louis, 161 Mo. 371, l. c. 379, 380, 61 S. W. 658, l. c. 661, this court said:

''The purpose of the freeholders in thus restricting the assembly is manifest and twofold. They sought to create a board whose experience and ability would especially fit it for the duty of contracting for a vast system of public improvements, and whose estimates should guide the assembly in entering upon them; and, secondly, to guard against extravagance by requiring that, before public work was ordered to be done, there should be expert estimates made thereof.''

The enactment of an ordinance under the initiative provisions of a charter, for a public improvement which was not recommended by the Board of Public Service, would interrupt and destroy the scheme and purpose of the restrictions contained in Section 1, Article 22, supra, as effectively as if such ordinance was adopted by the Board of Aldermen. Restrictions on the power of the Board of Aldermen of a city to enact ordinances are as a rule applicable to proposals under the initiative provisions. The Supreme Court en banc of the State of California held in Hurst v. City of Burlingame et al., 277 Pac. 308, l. c. 311 (6-8), that a zoning ordinance adopted through the initiative was void because no public hearings had been had upon the proposed ordinance as required by the zoning act. Note what the court said:

''It is the established law of this state that an ordinance proposed by the electors of a county or of a city in this state under the initiative law must constitute such legislation as the legislative body of such county or city has the power to enact under the law granting, defining and limiting the powers of such body. [Newsom v. Board of Supervisors (Cal. Sup.), 270 Pac. 676; Galvin v. Board of Supervisors, 195 Cal. 686, 235 Pac. 450. See, also, Hopping v. Council of City of Richmond, 170 Cal. 605, 150 Pac. 977; Hyde v. Wilde, 51 Cal. App. 82, 196 Pac. 118; State ex rel. Davies v. White, 36 Nev.

334, 136 Pac. 110, 50 L. R. A. (N. S.) 195.] It is too clear for controversy that, if the board of trustees of the city of Burlingame had adopted the ordinance in question without compliance with the requirements of the Zoning Act above outlined, said ordinance would have been inoperative and void. It is equally clear that the infirmity would not be cured by the purported adoption of the ordinance by the electors of the city under the initiative law." [See, also, Newsom et al. v. Board of Supervisors et al., 270 Pac. 676.]

The general rule stated in 43 Corpus Juris, 585, section 951, is as follows:

"For obvious reasons only such an ordinance, by-law, or measure may be submitted as is within the power of a municipal council to pass or adopt; if it would not be valid if adopted by the council, its infirmities cannot be cured by an affirmative vote of the electors."

To the same effect and somewhat in the same language is State ex rel. v. White, (Nev.), 136 Pac. 110, 1. c. 111 (4), where the court said:

"The initiative and referendum provisions of the city charter provide an additional method for the adoption of ordinances, but the fact that such method is pursued adds no additional validity to the ordinance. If the ordinance would be void if adopted by the city council, the infirmity would not be cured by its adoption by the vote of the electors of the city. [Long v. City of Portland, 53 Ore. 92, 98 Pac. 1111; Brazell v. Zeigler, 26 Okla. 826, 110 Pac. 1052; Giddings v. Trustees (Cal.), 133 Pac. 479.]"

We, therefore, rule that the provisions of Section 1, Article 22, of the city charter apply to proposals under the initiative as well as to ordinances proposed by the Board of Aldermen. This is in harmony with Section 1, Article 5, which provides that the initiative shall be exercised subject to the provisions of the charter. Any other interpretation would defeat the very purpose of the charter.

Appellants assert that a court of equity is without power to enjoin an election upon a proposal under the initiative. There are many cases where the holding of an election under the initiative and referendum has been enjoined. [For example see Kaesser v. Becker, 243 S. W. 346, 295 Mo. 93; State ex rel. v. Hall, 35 N. D. 34, 159 N. W. 281.] In the latter case the Supreme Court of North Dakota gave the question of power of courts to enjoin the calling of an election special attention. Many authorities and cases were there considered and reviewed. It was decided that a court of equity for good cause had such power. [See, also, State ex rel. v. Cunningham, 81 Wis. 440, 51 N. W. 724.] It then remains to be seen under what circumstances a court of equity may enjoin an election. In this case plaintiff sought to enjoin the calling of an election for the purpose of saving the taxpayers an expense of $200,000. The petition

charged, and it was admitted that the Board of Public Service had not recommended the passage of the proposed ordinances. The charter declared such a recommendation to be a necessary prerequisite to the validity of the ordinances. Since this essential preliminary step was not taken, the election would have been a nullity. In such a situation a court of equity has the power to enjoin the calling of an election and thereby save the taxpayers the expense of holding a useless election. [State ex rel. v. Hall, 35 N. D. 34, 159 N. W. 281; State ex rel. v. City of St. Petersburg et al. (Fla.), 145 So. 175; Roper & Gilley v. Lumpkins (Tex.), 163 S. W. 110; Hathaway v. City of Oneonta, 266 N. Y. Supp. 237, 148 Misc. 695; Griffith et al. v. Board of Education, 183 N. C. 408, 112 S. E. 10; City of Murray et al. v. Irvan, 185 S. W. 859, 170 Ky. 290; Cascaden v. City of Waterloo, 77 N. W. 333, 106 Iowa, 673.]

In the case of Griffith et al. v. Board of Education, supra, the court said:

"But it is generally held that an injunction will issue to restrain the holding of an election where there is no authority for calling it, and where the holding of such an election would result in a waste of public funds. [Solomon v. Fleming, 34 Neb. 40, 51 N. W. 304; 9 R. C. L. 1001.]"

The judgment is affirmed. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.