## INTERNATIONAL TELEMETER OF COLUMBIA CORP. et al., Appellants,

v.

## The CITY OF COLUMBIA, Missouri, a Municipal corporation, et al., Respondents.

### No. 26183.

Missouri Court of Appeals,
Kansas City District.

Dec. 4, 1972.

Joseph E. Stevens, Jr., Lathrop, Koontz, Righter, Clagett, Parker & Norquist, Kansas City, for appellants.

James H. Coonce, City Counselor, Columbia, for respondents.

Before SHANGLER, C. J., and CROSS, DIXON, PRITCHARD, SWOFFORD and WASSERSTROM, JJ.

WASSERSTROM, J.

This litigation marks the latest stage in the battle which has raged for many years in the City of Columbia, over the right to operate a Community Antenna Television system. The events and controversy here presented involve three competitor applicants: International Telemeter of Colum-

bia, Corp., (the appellant and who will be referred to hereinafter as "Telemeter"), Tiger Cablevision, Inc., (hereinafter referred to as "Tiger"), and CATV of Columbia, Inc. On May 13, 1970, the City Council of Columbia adopted Ordinance #5115, having for its purpose the grant of a CATV franchise to CATV of Columbia, Inc. Under the provisions of the City Charter governing the grant of franchises, this ordinance had to be submitted to an election,[1] and the City Council called such an election to be held August 4, 1970.

Prior to the adoption of Ordinance #5115, Telemeter, in April, 1970, had presented to the City Clerk a petition for an initiative ordinance which would provide procedures for the granting of licenses to operate cable television. This initiative petition was certified by the City Clerk on April 6, 1970. In addition to that initiative petition, Telemeter and Tiger also presented to the City Clerk on June 18, 1970, a petition proposing the enactment by initiative of four ordinances, as follows: the first ordinance would repeal Ordinance #5115; the second ordinance would grant a nonexclusive cable television franchise to Tiger; the third would grant a nonexclusive cable television franchise to Telemeter; and the fourth would grant a nonexclusive cable television franchise to CATV of Columbia, Inc. This new initiative petition was certified by the City Clerk on June 25, 1970, and came before the City Council at its meeting on July 6, 1970, but no action was taken thereon by the Council pursuant to the advice of the City Counselor that the subject matter could not property be enacted under the initiative provisions of the City Charter.[2]

1. § 89 of the Charter of the City of Columbia provides as follows:

"Section 89. Granting of franchises.

"All public utility franchises and all renewals, extensions and amendments thereof shall be granted only by ordinance. No such ordinance shall be adopted within less than thirty days after application therefor has been filed with the council, nor until a full public hearing has been held thereon. No such ordinance shall become effective until it has been submitted to the electors and has been approved by a majority of the electors voting thereon.

"No ordinance shall be submitted at an election less than sixty days after the grantee named therein has filed its unconditional acceptance of such franchise, and it shall not be submitted to a special election unless the expense of holding the election, as determined by the council, shall have been paid into the city treasury by the grantee. No exclusive franchises shall ever be granted, and no franchise shall be granted for a longer term than twenty years. No such franchise shall be transferable, directly or indirectly, except with the approval of the council expressed by ordinance after a full public hearing."

2. § 127 of the City Charter provides as follows:

"Section 127. Initiative.

"The electors shall have power to propose any ordinance, except an ordinance appropriating money or authorizing the levy of taxes, and to adopt or reject the same at the polls, such power being known as the initiative. Any initiated ordinance may be submitted to the council by a petition signed by qualified electors of the city equal in number to at least twenty per cent of the number of votes cast for councilman-at-large at the last regular municipal election, provided, that there be not less than four hundred signatures."

§ 132 dealing with the effect of an initiative petition provides:

"Section 132. Effect of an initiative petition.

"When an initiative petition has been certified as sufficient, the council shall proceed at once to consider the proposed ordinance, taking final action thereon not later than thirty days after certification.

"If the council shall fail to pass an ordinance in the form proposed by the initiative petition, it shall call a special election, unless there shall be a general election within ninety days after its final action thereon. At such special or general municipal election, such ordinance shall be submitted without alteration to the vote of the electors of the city. The enacting clause of such ordinance shall be: 'BE IT ORDAINED BY THE PEOPLE OF THE CITY OF COLUMBIA.' "

Thereupon Telemeter, Tiger and certain named individuals suing as class representatives, filed two separate lawsuits in the Circuit Court of Boone County. The first of these was a petition for declaratory judgment and injunction seeking to declare invalid and to enjoin the special election on August 4, 1970, which had been called for the purposes of submitting Ordinance #5115 to the electors. The second case so filed was for writ of mandamus in two counts. Count I sought to require the City Council to submit to the voters the four initiative ordinances dealing with cable television franchises. Count II sought, in the alternative, to force the submission of the licensing ordinance which had been submitted by initiative petition in April, 1970.

The trial court entered findings of fact, conclusions of law and judgment on August 1, 1970. The court found against plaintiffs on their attacks against the validity of Ordinance #5115 and held that the attempt to repeal Ordinance #5115 was premature; that the attempt to submit franchise grants by initiative was unauthorized under the provisions of the City Charter; and that the authorization of cable television service upon issuance of a license only would not be proper, inasmuch as this could only be done pursuant to franchise. From this judgment, all plaintiffs appealed to the Missouri Supreme Court on August 1, 1970.

Subsequent to those appeals, the situation has become considerably simplified. In the first place, Ordinance #5115 was defeated at the election held August 4, 1970. All parties agree that the result of that election renders moot the suit brought for declaratory judgment and injunction and also that portion of the mandamus action relating to repeal of Ordinance #5115. The second matter of simplification arises from the dismissal of the separate appeal by Tiger, Donald Pearson and Janice Pearson. The third phase of simplification comes from the ruling by the Missouri Supreme Court, 478 S.W.2d 391, that there was neither the requisite amount

in controversy to give that court jurisdiction nor any true constitutional question involved, for which reason the mandamus case (the only one remaining) has been transferred to this Court.

Apart from the constitutional points, which as stated are no longer live issues, Telemeter argues in its briefs that the initiative ordinance setting up licensing procedures for cable television should be submitted to the electorate. In support of that contention, Telemeter challenges the conclusions of the trial court to the effect that cable television is a public utility and therefore, must be franchised, rather than licensed. Alternatively, Telemeter argues that if the operation of cable television must be franchised, then there is no reason why a franchise should not be the proper subject of an initiative petition.

Counsel for both sides have extensively and ably briefed these interesting questions of whether CATV is a "public utility" and whether the grant of a right to operate such is a "franchise". However, most of that debate had become obsolete and largely irrelevant because of the Report and Order and Amended Regulations in connection therewith, issued by the Federal Communications Commission on February 12, 1972, subsequent to the preparation and the submission of the briefs herein. By that action, the Commission established many important new rules governing the regulation of cable television, but the portions of direct importance for our purposes are those dealing with the new relationships created in this regard between the Federal Government on the one hand, with State and local authorities on the other hand.

In a general way, the Commission has adopted the approach that "the local entity would consider legal and financial questions and measure the character qualifications of franchise applicants. And local governments would, in turn, certify to the Commission that the various criteria had been considered." 37 Fed.Reg. 3253. In

accordance with that concept, the new regulation § 76.31, 37 Fed.Reg. 3281, provides as follows:

"§ 76.31 Franchise Standards.

"(a) In order to obtain a certificate of compliance, a proposed or existing cable television system shall have a franchise or other appropriate authorization that contains recitations and provisions consistent with the following requirements:

"(1) The franchisee's legal, character, financial, technical, and other qualifications, and the adequacy and feasibility of its construction arrangements, have been approved by the franchising authority *as part of a full public proceeding* affording due process;" (emphasis supplied)

The foregoing regulation is explained and amplified in the Commission's report, paragraphs 177 and 178, 37 Fed.Reg. 3276:

" * * * Under the circumstances, a deliberately structured dualism is indicated; the industry seems uniquely suited to this kind of creative federalism. We are also persuaded that because of the limited resources of States and municipalities and our own obligation to insure an efficient communications service with adequate facilities at reasonable charges, we must set at least minimum standards for franchises issued by local authorities. These standards relate to such matters as the franchise selection process, construction deadlines, duration of the franchise, rates, and rate changes, the handling of service complaints, and the reasonableness of franchise fees. The standards will be administered in the certificating process.

"178. *Franchising.* We are requiring that before a cable system commences operation with broadcast signals, it must obtain a certificate of compliance from the Commission. The application for such a certificate must contain (§ 76.-31(a)(1)) a copy of the franchise and a detailed statement showing that the franchising authority has considered in a public proceeding the system operator's legal, character, financial, technical, and other qualifications, and the adequacy and feasibility of construction arrangements. We expect that franchising authorities will publicly invite applications, that all applications will be placed on public . file, *that notice of such filings will be given, that where appropriate a public hearing will be held to afford all interested persons an opportunity to testify on the qualifications of the applicants, and that the franchising authority will issue a public report setting forth the basis for its action.* Such public participation in the franchising process is necessary to assure that the needs and desires of all segments of the community are carefully considered." (emphasis supplied)

These regulations are within the power and jurisdiction of the Federal Communications Commission. United States v. Southwestern Cable Co., 392 U.S. 157, 88 S.Ct. 1994, 20 L.Ed.2d 1001; United States v. Midwest Video Corp., 406 U.S. 649, 92 S.Ct. 1860, 32 L.Ed.2d 390, decided June 7, 1972; Springfield Television, Inc., v. City of Springfield, 462 F.2d 21, C.A.8; "Federal and State Regulation of Cable Television: An Analysis of the New FCC Rules", 6 Duke Law Journal 1151. Absent compliance with these new regulations, a franchisee from the City of Columbia would not be able to obtain a Federal Communications Commission license and, therefore, would be unable to operate. Consequently, it becomes imperative to inquire whether the granting of a franchise under the initiative provisions of the Columbia Charter would comply with the Commission rules. If not, the adoption of those ordinances would be totally ineffective, and in such case this Court should not order the City of Columbia to engage in what would be only an expensive exercise in futility.

Clearly, an attempt to grant a franchise pursuant to the initiative provisions of the Columbia City Charter could not be in compliance with the Federal Communica-

tion Commission's regulations hereinabove quoted, since there could not be the required public hearing. A hearing by the City Council could not be effective for the purposes intended, since both it and the electors would be powerless to make any change in the proposed ordinance, even if such change were overwhelmingly demanded by the testimony and data presented. The City Council would be impotent for the reason that the initiative provision of the City Charter § 132 requires that the ordinances "shall be submitted *without alteration* to the vote of the electors of the city". Nor could the results of the hearing be effectively put to use by the electorate itself, since the people as a whole would have no choice except to vote upon the initiative ordinance as submitted, without change. Moreover, no practical way exists under which this hearing can be conducted by the people as a whole, in the nature of an old-time New England town meeting; nor could the results of a hearing held by the Council be communicated to the people as a whole, in any reasonable manner which would "afford due process" as required by Section 76.31 of the Regulation.

This case comes within the accepted general rule stated in 42 Am.Jur.2d, Initiative and Referendum, § 9, p. 658:

> "Where the required procedure for a particular ordinance involves steps such as notice and hearing, in addition to normal legislative deliberation, such an ordinance is not subject to initiative and referendum."

This general rule was applied in Newsom v. Board of Supervisors, 205 Cal. 262, 270 P. 676, 1. c. 679 (banc) where a suit in mandamus sought to enforce a county board of supervisors to submit to the electors a proposed franchise ordinance for a tollbridge under initiative provisions of the California Constitution and statutes. After pointing out many factors which had to be taken into consideration in connection with the grant of such a franchise, the court proceeded to rule that such matter is not properly subject to the initiative procedure:

> "* * * These considerations requiring necessary and precedent findings of fact by the board, together with the further statutory requirement of a hearing and a determination on protests and asserted prior rights, compel the conclusion that it was not intended, either by the provision of the Constitution or by section 4058 of the Political Code, that the initiative should be applicable to the granting of a tollbridge franchise under present law. In what has been said we have in mind the declarations of this court that the act of granting a franchise is legislative in character. People v. Board of Supervisors, 122 Cal. 421, 55 P. 131, and cases therein cited; 12 Cal. Jur. 682. It is concluded, however, that, under the law as it now stands, the legislative functions of the board of supervisors in considering and acting upon an application for a toll bridge franchise are so intermingled with the administrative and quasi judicial functions of said board as to render the operation of such law entirely inconsistent and unworkable with the initiative law."

See also Lindsley v. Dallas Consol. St. Ry. (Tex.Civ.App.) 200 S.W. 207, where the court granted an injunction against an initiative proposal for the licensing of jitneys. The court emphasized the fact that notice and hearing was *required* for such licensing and that this could not be accomplished "in a campaign before the electorate of the city".

The rule in question has been applied frequently in cases where zoning changes have been sought under initiative procedures. Two of the leading cases throughout the country on this application of the rule are Baum v. City of St. Louis, 343 Mo. 738, 123 S.W.2d 48, and State ex rel. Powers v. Donohue, Mo. banc, 368 S.W.2d 432. The Baum case was *cited and followed* in Dewey v. Doxey-Layton Realty Co., 3 Utah 2d 1, 277 P.2d 805, 1. c. 807–

808, in which the court held in part as follows:

"'* * * It would seem to be an idle proceeding for the board of trustees, after an initiative petition is presented to it, to enter upon an investigation as to a proper zoning plan, give notice and conduct hearings for the benefit of interested property owners and the public in general and at the conclusion of its deliberations have no power to change the terms of the proposed ordinance. The initiative law and the zoning law are hopelessly inconsistent and in conflict as to the manner of the preparation and adoption of a zoning ordinance. The Zoning Act is a special statute dealing with a particular subject and must be deemed to be controlling over the initiative, which is general in its scope.'"

The Donohue case was cited and followed in Hancock v. Rouse, Tex.Civ.App., 437 S.W.2d 1, l. c. 4, where the underlying rationale of the rule was persuasively stated:

"The ordinance proposed by the petitions submitted to the City Council of Bellaire is an amendment to the Bellaire Zoning Ordinance. The provisions of the general law requiring notice and hearing cannot be complied with if the ordinance is submitted to an election. For a hearing to be meaningful it necessarily must be held before the body authorized to act in the matter. Southwestern Tel. & Tel. Co. v. City of Dallas, 104 Tex. 114, 134 S.W. 321 (1911). A zoning ordinance enacted by the City Council without the notice and hearing required by statute would be invalid and the power of the people to legislate directly is subject to the same limitations.

Bolton v. Sparks, 362 S.W.2d 946 (Tex. 1962). Since notice and hearing are clearly required by the Charter, and the general law of the State, as a prerequisite to the enactment of Zoning Ordinances, and since notice and hearing have no place in the process of legislating through initiative and referendum, the power of the people of Bellaire to legislate directly does not extend to the subject of zoning. State v. Donohue, 368 S.W.2d 432 (Mo.1963); Elkind v. City of New Rochelle, 5 Misc.2d 296, 163 N. Y.S.2d 870, Aff'd 5 N.Y.2d 836, 181 N. Y.S.2d 509, 155 N.E.2d 404 (1950); Hurst v. City of Burlingame, 207 Cal. 134, 277 P. 308 (1929); DeLatour v. Morrison, 213 La. 292, 34 So.2d 783 (1948); City of Scottsdale v. Superior Court, 103 Ariz. 204, 439 P.2d 290 (1968)."

See also Korash v. City of Livonia, 38 Mich.App., 626, 196 N.W.2d 883.

If there could be any lingering doubt as to the inapplicability of the initiative with respect to CATV franchising, any such doubt would be dispelled by the requirement set forth in ¶ 178 of the Federal Communications Commission Report and Order, dated February 12, 1972, which requires "that the franchising authority will issue a report setting forth the basis for its action". It is clear without requiring extended comment that if the electorate of the City of Columbia were to constitute itself as "the franchising authority", there would be no feasible way in which the requisite report could be forthcoming.

The judgment of the trial court is affirmed.

All concur.