STATE of Missouri, at the information of Gary W. FLEMING, Prosecuting Attorney, at the relation of Wilbur Alexander, Walter Fricke and Ralph Houchen, Plaintiffs-Appellants,

v.

Larry ZIMMERSCHIED, Marvin M. C. Keage, Lester Harms, C. A. Stapels, Max Thomas, and H. T. "Bud" Borchers, all members of the Board of Directors of the Sweet Springs Ambulance District, and Robert S. Leftwich, County Collector of Pettis County, Missouri and Russell Whitlock, County Collector of Saline County, Missouri, Defendants-Respondents.

No. 59575.

Supreme Court of Missouri, En Banc.

Dec. 19, 1977.

M. Craig Cassing, Sedalia, for relators.

R. L. Alexander, Marshall, for respondents.

SEILER, Judge.

This case involves an attack by quo warranto on the validity of the existence of an ambulance district sought to be organized under provisions of §§ 190.005–085, RSMo Supp, 1975. We have jurisdiction because title to an office under the state is involved, Mo.Const., Art. V, § 3. The trial court entered judgment in favor of respondents.

The attack centers upon the failure to hold a hearing on the date originally set and in failing to include certain information in the notice of hearing.

This is what happened: A petition requesting the creation of an ambulance district was filed with the county court of Saline County on April 30, 1975.[1] Section 190.020–1, supra, requires the county court to set the petition for hearing within not less than 30 nor more than 40 days after the filing and requires publication on three separate occasions in the newspaper, the first such publication to be not less than 20 days prior to the date set for the hearing. Section 190.020–2, supra, requires that the notice is to include a description of the territory as set out in the petition, names of municipalities located therein, name of the proposed district and the question of creating an ambulance district. On May 5, 1975, the county court scheduled a public hearing on the petition for June 2, 1975 in Sweet Springs at 7:30 p. m. Apparently no notice was ever published for the proposed hearing to be held on June 2, 1975, nor was any meeting held on that date. However, a public hearing was held in Sweet Springs, in the city hall, on June 25. Notice for the June 25 meeting was published in the Sweet Springs Herald, a weekly newspaper published in Sweet Springs,[2] three times, June 5, 12, and 19, but the notice did not include the description of the territory as set out in the petition nor the names of the municipalities to be included.

---

1. Under Sec. 190.010, supra, an ambulance district may cross county lines. The district before us consists of territory in Saline and Pettis counties. About three-fourths of the territory lies in Saline County and includes the towns of Sweet Springs, Blackburn and Mt. Leonard. The remainder lies in Pettis County and includes the town of Houstonia. Sweet Springs, with a 1970 population of 1,716, is by far the largest of the four towns or villages.

Under Sec. 190.015, supra, where the proposed ambulance district crosses county lines, the petition is required to be filed with the county clerk of the county "in which the great-er part of the area is situated." In the case before us, this is Saline County.

2. No contention is made that the Sweet Springs Herald does not qualify as a newspaper qualified to publish legal notices under Sec. 493.050, RSMo 1969. Under Sec. 190.020–2, supra, the newspaper selected must have "a general circulation within the territory proposed to be incorporated as an ambulance district." Judging from the newspaper guide published in the 1975–76 Official State Manual, the Sweet Springs Herald is the only newspaper published in the proposed area.

Those attending the June 25, 1975 meeting unanimously approved the establishment of the district and called on the county court to conduct and supervise the necessary election. On August 8, 1975 the election was held, proper notice of the same having been given in the Sweet Springs Herald July 3, 10 and 17, 1975. The proposition carried at the election by a comfortable margin, the results were certified to the county court, and a subsequent election was held for the election of directors. The directors organized and have caused taxes to be levied and collected which are now being held in escrow pending determination of the legal existence of the district.

The informants, all Pettis County based, maintain that failure to hold the hearing on the petition within the prescribed period of not less than 30 nor more than 40 days after the filing of the petition (which would have meant a hearing on some date between May 30 and June 9, 1975) is fatal and additionally that the notice which was given by the county court of the public hearing to be held on June 25, 1975 was also fatally deficient because of failure to include in it a description of the territory sought to be annexed or the names of the municipalities included therein. The respondent ambulance district directors, of course, take the position that these deficiencies did not void the proceedings and that the trial court was correct in its finding that the notices of the public hearing were sufficient, that the procedure leading up to and the hearing itself were sufficient, that the other proceedings were in accordance with the statutes and that the defendant Sweet Springs Community Ambulance District was and is a bona fide entity under the law, a body corporate and political subdivision of the state under the aforesaid chapter 190.

Section 190.020.2 provides that with respect to the notice to be given of the hearing on the petition the first of the three publications "shall" be not less than 20 days prior to the date set for hearing; § 190.-020.1 provides that upon presentation of the petition to the county court the court

"shall" set the petition for hearing within not less than 30 days or no more than 40 days after the filing and § 190.020.2 provides that the notice "shall" include a description of the territory as set out in the petition and names of municipalities located therein. The statute says nothing, however, as to the effect of failure to include such material or to comply with the time schedule.

In the case before us, the hearing originally was set for June 2 in Sweet Springs for 7:30 p. m., but no notices were published whatever with respect to that date, nor was any hearing held. At some undisclosed time a hearing was set by the county court for June 25,[3] which was more than 40 days after the filing of the petition. As said, three notices were published for the June 25 hearing, the first of which was, as required, published not less than 20 days prior to the date set for the hearing, but the notices did not include a description of the territory as set forth in the petition nor the names of the municipalities located therein. Subsequently the county court set an election date and there is no dispute but what proper notice was given of the election and that in the election the proposition for establishing the ambulance district carried. There is no indication anyone was prevented from exercising the franchise on account of any departure from statutory provisions mentioned above.

The parties have not cited, nor have we been able to locate, a case precisely in point, but we find it difficult to conclude that it was the intention of the legislature that failure to set the hearing date on the petition not less than 30 nor more than 40 days after filing and failure to include in the notice of the hearing when it was given a description of the territory as set out in the petition and the names of the municipalities therein necessarily means that the entire proceedings are void.

It is difficult to see where any substantial rights depend upon literal compliance with these details. The hearing on the petition

3. The June 25, 1975 hearing was set for Sweet Springs, at 7:30 p. m., in the city hall.

was held 56 days after the petition was filed rather than a maximum of 40 days thereafter. The added 16 days did not destroy orderly procedure nor make the petition so stale that circumstances as to the need for or advisability of having an ambulance district would have changed in the meantime. Notice of hearing stated that the hearing would be at the Sweet Springs City Hall and that it would be "on the Sweet Springs and surrounding area proposed ambulance district." Sweet Springs, which is only a few miles from the Saline-Pettis county line, is rather close to the center of the proposed district and contains approximately 35 per cent of the population of the district. It seems to be a reasonable choice for the meeting place, judging from the map of the proposed district filed as an exhibit. The other three towns and villages in the district are within ten to twenty miles of Sweet Springs.

Under the statutes no particular action is required to be taken at the hearing. The statutes do not call for a vote at the hearing and the county court is not bound one way or the other by what the public response is.

The real test comes when the election takes place. In the case before us the notices with respect to the election were in order. Even though the notice of the public hearing in Sweet Springs did not include a description of the territory of the proposed district or the name of the municipalities included therein, the notices of election included both, together with the proposition to be voted upon, form of ballot and list of voting places. The election was held as scheduled. It is the election which determines whether or not there shall be an ambulance district and whether taxes are to be levied.[4]

One of the purposes of the legislature in enacting Chapter 190 was, as is seen from the emergency clause which was part of the original enactment, S.B. 108, 1971 Mo. Laws 236, to meet the "serious and urgent need to create ambulance services in the rural counties due to a reduction of such services by funeral homes and those other persons who have formerly operated such services." The statute is primarily remedial and enabling in character, making possible that which otherwise there would be no authority to do.

*State ex rel. Rogersville Reorganized School District v. Holmes,* 363 Mo. 760, 253 S.W.2d 402 (banc 1952) involved statutes with explicit time requirements which were not met. Section 165.673(2), RSMo 1949 required a county board of education to submit a specific plan for initial reorganization of the school districts of the county not later than May 1, 1949. The county board did not submit the Rogersville plan until February 1, 1950, nine months after the statutory deadline.

Section 165.677, RSMo 1949 required that in cases where the state board of education rejected a proposed plan, the county board could nevertheless present its own plan to the voters at the election to be held on the first Tuesday in November, 1949, which would be November 7. But the election in Washington County was held on November 1, 1949. Section 165.693, RSMo 1949 provides that if the plan failed to carry (as it did in Washington County) the board can submit another plan not sooner than one year nor later than two years after the disapproval of the first. Instead, the second election in Washington County was held on November 6, 1951, which was five days beyond the two year limit.

In all these instances, the court held that despite the mandatory provisions of the statutes, the provisions with which relators failed to comply were directory only and did not render invalid their organization and subsequent existence as a legal entity. Portions of the court's opinion are worthy of quotation here, because of their aptness to the situation before us:

"As a general rule, a statute which regulates the manner in which public of-

---

4. Section 190.035 gives an ambulance district power to levy a property tax not to exceed 15 cents on the $100.00 valuation.

ficials shall exercise the power vested in them, will be construed as directory rather than mandatory, especially where such regulation pertains to uniformity, order, and convenience, and neither public nor private rights will be injured or impaired thereby. If the statute is negative in form, or if nothing is stated regarding the consequence of effect of non-compliance, the indication is all the stronger that it should not be considered mandatory" . . .

"For the reason that individuals or the public should not be made to suffer for the dereliction of public officers, provisions regulating the duties of public officers and specifying the time for their performance are in that regard generally directory. A statute specifying a time within which a public officer is to perform an official act regarding the rights and duties of others is directory unless the nature of the act to be performed, or the phraseology of the statute, is such that the designation of time must be considered a limitation of the power of the officer . . ."

The object and purpose of the law is to effect a general reorganization of the school districts of this State. It should be liberally construed to the end that its ultimate objective may be attained . . And especially should this be done where no contention is made that any public or private right has been impaired or injured by mere tardiness of action.

It is readily apparent that the schedule was placed in the law primarily because the Legislature deemed a general reorganization of the school districts of this State to be of urgent need. But it was the need that prompted the urgency. No suggestion is made that the need became any the less subsequent to expiration of the schedule. Surely, therefore, the legislature did not intend that a belated or tardy compliance with either of these two provisions of the schedule would be construed to defeat the end to be accomplished when both are so clearly intended to expedite rather than to abort the fulfillment of the need. As stated in *St. Louis County Court v. Sparks,* 10 Mo. 117, 122: "It would be strange if a statute specifying an early day at which an act must be done with a view to its speedy execution, should be construed that the act could not be done at all after the day when the necessity for its performance is as great, if not greater, afterwards than before."

*Id.* at 405–06 (citations omitted); *see also, State on Inf. Dalton v. Dearing,* 364 Mo. 475, 263 S.W.2d 381 (banc 1954), where this court held that the failure of the governor to appoint the nineteenth member of the board of freeholders within the required time of 30 days as required by a constitutional provision, the appointment being made 67 days too late, did not invalidate the legality of the appointment of the board or its actions.

We believe the view we take of the effect of the failure to comply literally with the statutory provisions as to the date set for the initial public hearing and the information to be included in the notice thereof comes closer to the legislative intent in solving this mainly rural problem involving ambulance service than would be a holding that such a failure nullifies all that was done in compliance before and after.[5] We

5. The early opinion of *State ex rel. Major v. Wood,* 233 Mo. 357, 135 S.W. 932 (banc 1911), relied upon by the dissent, is distinguishable. There the statute, § 8529, RSMo 1909, required that the county court declare a city incorporated upon presentation of a valid petition signed by a majority of the inhabitants of the proposed city. No vote of the people was required as a prerequisite to incorporation. Said petition being found invalid, the county court was clearly without jurisdiction to declare the municipal incorporation. Under that statute the petition was the singular device of public approbation of the proposed incorporation. Such is not the case here. The county court called a hearing for which notice was published. There the assemblage gave unanimous approval to the establishment of the district; a subsequent election, proper public notice in all respects having been given, resulted in a second round of community approval. An election of directors followed. Thus the crucial importance of the original petition is not a factor here, and the appealing psalmistry of Lamm, J. in *Major,*

see nothing to indicate that the legislature intended that the penalty for noncompliance in each and every respect with §§ 190.015 and 190.020 should be invalidation of the entire proceedings under the chapter.

We do not believe the failure to abide by statutory provisions here under discussion as to form of the notice of and the date for the hearing on the petition are sufficient to make void the subsequent election conducted in full compliance with the election requirements and the resulting order declaring the organization of the district and the election of the directors, or the levying and collecting of the taxes. The judgment of the trial court is therefore affirmed and the trial court is directed to act accordingly with respect to the tax revenues being held in escrow.

MORGAN, C. J., and BARDGETT, FINCH and RENDLEN, JJ., concur.

HENLEY, J., dissents in separate dissenting opinion filed.

DONNELLY, J., dissents and concurs in separate dissenting opinion of HENLEY, J.

HENLEY, Judge, dissenting.

I respectfully dissent for the following reasons.

The Ambulance District Law,[1] enacted in 1971, provides that persons owning property in an area sought to be incorporated as an ambulance district be given notice that a hearing will be held by the county court at a certain time and place. The purpose of the hearing is to determine the sufficiency of the petition and whether the territory and the proceedings meet the requirements of the law. Sections 190.020 and 190.030. Subsection 2 of § 190.020 requires that "[t]his notice shall include a description of the territory as set out in the petition, [and] names of municipalities located therein * * *." It is admitted that the notice

published did not meet either of these requirements.

The purpose of the requirement that the notice describe the territory proposed to be incorporated was to inform those who had property therein, those whose pocketbooks would be affected thereby, that they might appear on the day assigned to contest the granting of the petition or the inclusion of part or all of their lands. Without a description of the territory, those who would bear the tax necessary to support the district would not have the notice the law requires, nor the knowledge the notice was designed to impart, i. e., that they were the persons the notice was intended to identify and reach with the message they had a right to appear and to be heard. In this respect, the notice published was fatally defective.

In *State ex rel. Major, Atty. Gen. v. Wood et al.*, 233 Mo. 357, 135 S.W. 932 (banc 1911) this court held the county court of St. Louis county (an administrative body) was without jurisdiction to incorporate the city of Wellston, because the incorporating petition was fatally defective. 135 S.W. at 936. What was said by the court (135 S.W. at 935) regarding the effect on jurisdiction of the county court of a fatally defective petition is applicable by analogy to the notice published in this case:

"The petitioners go into a court of limited and inferior jurisdiction and invoke a high statutory power granted to that court to be used only on the strict condition precedent that a petition be presented of the character prescribed by the same statute. In such case, the rules are: (1) That where a statute creates a right and provides a remedy, as here, the remedy so provided is preclusive and must be followed. *State ex rel. v. Trust Co.*, 209 Mo. [472], loc. cit. 493, 108 S.W. 97; *Clark v. Railroad*, 219 Mo. [524], loc. cit. 538, 539, 118 S.W. 40. (2) That on direct attack, as here, presumptions are not

---

*supra*, is not applicable. Here, additionally, rather than seek to enjoin the election which they now insist was ordered without jurisdiction, as they could have done if their position were correct, *Wann v. Reorganized School Dist. No. 6*, 293 S.W.2d 408 (Mo.1956); *Baum*

*v. City of St. Louis*, 343 Mo. 738, 123 S.W.2d 48 (1939), relators have waited until after the election results were against them to protest.

1. Sections 190.005 to 190.085, RSMo Supp. 1971.

indulged to support or eke out the jurisdiction of courts of inferior and limited jurisdiction (these not proceeding according to the course of the common law), but their jurisdiction must affirmatively appear on the face of their proceedings. *State ex rel. v. Wilson*, 216 Mo. [215], loc. cit. 277, 115 S.W. 549.

"We have no call to read anything of substance out of that statute that the lawmaker has taken the pains to put into it, or read anything into it that he has taken pains to leave out of it. In clear words he has said what the petition shall set forth, and for what it shall pray. The commands of the statute are simple and few. They lay out a straight and narrow road to follow. Prosperous and happy is he who walks therein, for obedience to those commands is a jurisdictional requirement." See also: *State ex rel. Attorney General, at relation of Bales et al. v. Hyde et al.*, 2 S.W.2d 212, 215[5, 6] (Mo.App.1928).

I would hold that the failure of the published notice to describe the territory sought to be incorporated imparted no notice to the persons the statute required that it reach; that for this reason the county court did not have jurisdiction of the person of these owners (the absence of which is apparent from the face of the record) and, therefore, was without jurisdiction to sustain the petition and call an election.