Robert C. Babione, St. Louis, for relators/appellants.

Leo V. Garvin, Jr., Paul M. Maloney, James J. Wilson, City Counselor, Edward J. Hanlon, Deputy City Counselor, Julian L. Bush, Associate City Counselor, St. Louis, for respondents.

**Larry RICE, et al., Relators/Appellants,**

**v.**

**Leo G. STOFF, et al., Respondents.**

**No. 61451.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 17, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Dec. 23, 1992.

Application to Transfer Denied
Jan. 26, 1993.

GARY M. GAERTNER, Presiding Judge.

Appellants, Larry Rice, et al., appeal a judgment in favor of respondents, Leo Stoff, et al., and the City of St. Louis, dissolving a preliminary order in mandamus in the Circuit Court of the City of St. Louis. Additionally, respondents Leo Stoff, et al., cross-appeal a different portion of the same judgment, declaring signatures on an initiative petition circulated by appellants valid. The City of St. Louis was a party to the instant action as an intervenor. We vacate the Circuit Court's declaratory judgment ruling, and affirm the mandamus ruling.

Appellants are members of the Committee of the Petitioners. This *ad hoc* group was formed to organize a petition drive in an attempt to place a proposed ordinance on the ballot through initiative petition.

The proposed ordinance provides for transfer of the former City Hospital No. 1 complex to the Near Southside Redevelopment Corporation, and redevelopment of the facility for use as a homeless shelter, transitional housing, and permanent low cost housing, as well as facilities for adult education, job training, and related support services.

Petitions were circulated and signatures collected, many by homeless people themselves. On August 3, 1990, these petitions were submitted to the Board of Election Commissioners ("BEC") for certification. The BEC refused to consider signatures appearing on any petition which was not circulated by a registered voter. Because homeless people have no permanent address, they are unable to register to vote. Thus, the BEC's ruling resulted in the invalidation of some 1,733 signatures of registered City voters, which appeared on petitions circulated by an unregistered person. Without these signatures, appellants fell 1,339 signatures short of the required number, and the petition was certified as insufficient.

On November 28, 1990, appellants filed this mandamus action in the Circuit Court of the City of St. Louis, asking the court to compel the BEC to count the signatures invalidated by the BEC ruling. The City of St. Louis moved to intervene on December 11, 1990, and that same day filed a motion for judgment on the pleadings. In their motion, the City alleged that the proposed ordinance was not a proper subject for the initiative. Two days later, the court granted the City's motion to intervene and took the motion for judgment on the pleadings under submission.

Some time later, on April 25, 1991, the BEC filed an answer and counterclaim for declaratory judgment. In its counterclaim, the BEC sought a declaration that its action was proper, and the signatures obtained by unregistered persons were invalid.

After various procedural foibles, motions to reopen the record, and motions to amend judgment, the court entered detailed findings of fact and conclusions of law, as well

as an order, on December 23, 1991. Appellants moved to amend the judgment on January 7, 1992, and the court denied the motion by order on January 17, 1992. This appeal and cross-appeal ensued.

The City of St. Louis, as intervenor, claims mandamus cannot issue because the facial illegality of the proposed ordinance compels denial of the writ. *See State ex rel. University Park Bldg. Corp. v. Henry,* 376 S.W.2d 614, 617 (Mo.App., St.L.Ct.App. 1964). Intervenor claims, *inter alia,* that the Urban Redevelopment Corporations Law, RSMo § 353.010 et seq. (1986), limits the power of City voters to act on the instant controversy. We agree.

RSMo § 353.060 provides:

An urban redevelopment corporation shall operate under this chapter on one or more redevelopment projects pursuant to an authorized development plan, and with respect to each such project shall have such rights, powers, duties, immunities and obligations, not inconsistent with the provisions of this law, as may be conferred upon it by city ordinance duly enacted by the <u>legislative authority</u> of a city affected by this chapter which is authorizing or has authorized such plan; provided, however, that no such rights or powers, except those previously granted, shall be granted by any governing authority to any urban redevelopment corporation after August 13, 1982; unless the governing authority shall hold a public hearing for the stimulation of comment by those to be affected by any such grant and shall determine thereafter that the area covered by the plan is blighted; provided, however, that notwithstanding the provisions of this section, such urban redevelopment corporation may, as a redeveloper under the provisions of the land clearance for redevelopment authority law, acquire property, by purchase or lease, from a land clearance for redevelopment authority as defined in said law, in the manner and under the terms and conditions specified in said law.

(Emphasis ours). The term "legislative authority" (underlined above) is defined by RSMo § 353.020(5), which states:

"**Legislative authority**" shall mean the city council or board of aldermen of the cities affected by this law;

Basing our interpretation of the instant situation on the above two statutory provisions, we conclude the initiative petition before us would exceed the City's authority. Constitutional Charter cities, such as the City of St. Louis, are given all powers which the General Assembly can give them, provided the powers so granted are consistent with State constitutional or statutory law. Mo. Const. art. VI, § 19(a). The Constitution specifically states the aforementioned powers are unlimited unless specifically limited in the Charter itself or subsequent statutory law. *Id.* In the instant case, we believe the Charter-granted power of initiative petitioning is limited by the wording of the above statute.

Proper subjects for the initiative have been a subject of controversy from time to time. In *Baum v. City of St. Louis*, 343 Mo. 738, 123 S.W.2d 48 (1938), the plaintiff tried to place an ordinance requiring development of a mass transit system on the ballot. The court ruled the initiative inappropriate because its use would short-circuit review of the plan by the Board of Public Works, and such review was mandated by statute. *Baum*, 123 S.W.2d at 49. The court further provided that restrictions on the power of the Board of Alderman of a city to enact ordinances are, as a rule, applicable to proposals under the initiative provisions. *Id.* at 50. In *State ex rel. Powers v. Donohue*, 368 S.W.2d 432 (Mo. banc 1963), the relator sought, successfully, to prohibit placement of a zoning ordinance on the ballot. Again, because the initiative would short-circuit the public notice and hearing requirements of the comprehensive zoning ordinance, the court held the proposed ordinance was improper for initiative petitioning. *Donohue*, 368 S.W.2d at 438–9. Thus, the court reasoned, the initiative was improper. *Id.*

In the case before us, we find a similar situation exists. RSMo § 353.060 (1986) mandates a public hearing "for the stimulation of comment by those to be affected...." This statutory requirement, like those in *Baum* and *Donohue*, would be short-circuited by the instant initiative. We therefore conclude this situation is not a proper one for the initiative. We need not address the declaratory judgment question, as it is now moot. That part of the circuit court's holding is, therefore, vacated. The remainder of the circuit court's ruling is affirmed.

SMITH, J., and BLACKMAR, Senior Judge, concur.