STATE ex rel. CHILDRESS, et al., Relators–Appellants,

v.

Deborah ANDERSON, et al., Respondents.

No. 18769.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 8, 1993.

James A. Burt, Strong & Associates, P.C., Springfield, for relators-appellants.

Howard C. Wright, Jr. and Nancy K. Yendes, Springfield, for respondents.

Don G. Busch, Woolsey, Fisher, Whiteaker & McDonald, Springfield, amicus curiae.

PAUL J. SIMON, Presiding Special Judge.

Relators, Larry B. Childress, Penny L. Childress and McLean Enterprises, Inc., appeal the trial court's denial of their petition for writ of mandamus. We affirm.

Relators' petition sought to compel respondents, Deborah Anderson, City Clerk of the City of Springfield, Missouri, (clerk) and the members of the Springfield City Council (council), "to comply with Section 14.4 of the Charter of the City of Springfield, and place the citizen-initiated measure on the ballot in the event the city clerk determines that the proper number of signatures appear on the initiative petitions...." The citizen-initiated measure seeks to submit to the citizens of Springfield a proposal to rezone two contiguous parcels of land located in the City of Springfield from residential to commercial use. The ordinance at issue was never submitted to the city planning and zoning commission (commission) for its examination and recommendation.

After the petition was submitted to the clerk, the council passed Resolution No. 8071 directing the clerk to "take no action with respect to any initiative petition pertaining to the rezoning of property in the City of Springfield, Missouri, under Article XIV of the City of Springfield Charter because the rezoning of property is not subject to the initiative process as decided by the Missouri Supreme Court in State v. Donohue, 368 S.W.2d 432 (Mo. banc 1963)." On April 7, 1993, relators then filed their petition for writ of mandamus in the trial court alleging that they had presented initiative petitions to the clerk pursuant to § 14.3 of the charter, and that they are the fee simple owners of the two parcels of subject property. The petition contained other allegations which are essentially conclusions of law, including the allegation that the clerk has no discretion or authority to refuse to perform the ministerial tasks mandated by § 14.4 of the charter, and that the charter and Missouri case law provide for the citizens to exercise their power through the initiative process in regard to zoning issues.

No alternative writ was issued. Respondents filed a "Motion to Dismiss and Suggestions in Opposition to the Issuance of a Writ of Mandamus" (Motion to Dismiss). One point of the Motion to Dismiss stated that the petition was unverified and contained no recitation of facts which, if true, would require the clerk to review signatures of any petition presented to her. The Motion to Dismiss also stated that there were unverified references to facts in the suggestions filed by relators, but that this is insufficient to support the issuance of a preliminary writ in mandamus. After relators filed a motion

for judgment on the pleadings, respondents filed "Supplemental Suggestions and Affidavits in Opposition to the Issuance of a Writ of Mandamus and Granting of Judgment on the Pleadings," along with various exhibits. Relator, Larry B. Childress, also filed an affidavit stating that the initiative petition contained 3,133 signatures of persons believed to be qualified voters of the City of Springfield.

The trial court then rendered judgment as follows:

NOW ON this 27th day of April, 1993, Relator's (sic) Motion for Judgment on the Pleading, [and] Respondents' Motion to Dismiss * * * are before this Court for consideration. After being fully advised in the premises, it is hereby,

ORDERED, ADJUDGED AND DECREED that * * * Relators['] Petition for a Writ of Mandamus is denied. Judgment is entered in favor of Respondents. Costs assessed against Relators.

■ The procedure for a mandamus proceeding was set out in *State ex rel. Schaefer v. Cleveland*, 847 S.W.2d 867, 869–70[2–7] (Mo.App.1992), wherein it is stated:

The usual procedure in a mandamus case is for the petition to be filed, the court to determine whether an alternative writ should issue, denial of the writ or issuance of same, and answer to the alternative writ if issued. It is not the petition for the writ but the alternative writ in mandamus which corresponds to the petition in an ordinary civil action. Therefore, it is the alternative writ, and not the petition, to which a respondent makes his return. An order refusing an alternative writ of mandamus is not a final judgment or order and is not appealable. The remedy for refusal to issue a mandamus is by a direct application to the higher court which has jurisdiction in such matters.

Where, however, the respondent appears without service of an alternative writ, and makes his return, the petition stands as and for the alternative writ itself for the purposes of the case and the return. Where the court dismisses the petition following answer or motion directed to the merits of the controversy and in so doing

determines a question of fact or law the order is final and appealable.

(Citations omitted.) Here, reasonably construing the trial court's judgment, based on the motions and pleadings, it appears to be a dismissal pursuant to respondents' motion to dismiss rather than a denial of the petition. The motion to dismiss was, in part, directed to the sufficiency of the allegations to state a claim for relief. Therefore, we consider as true all well pleaded facts. *Id.*, at 869. Also, the trial court's ruling pursuant to respondents' motion to dismiss is a ruling on the sufficiency of the allegations, an issue of law. *Id.*, at 870[6, 7]. As such, the trial court's judgment is final and appealable and we have jurisdiction. *Id.*

■ Moreover, the record shows that the parties submitted affidavits and exhibits along with their suggestions to the trial court. When a party introduces evidence beyond the pleadings, a motion to dismiss is automatically converted to a motion for summary judgment. *Hyatt Corp. v. Occidental Fire & Cas.*, 801 S.W.2d 382, 392[9] (Mo.App. 1990). Thus, the trial court's judgment may reasonably be construed as a summary judgment, which is appealable. *See, Uhle v. Sachs Electric*, 831 S.W.2d 774, 776 (Mo.App. 1992).

We turn to the merits. In their point on appeal, containing two subpoints, relators contend that the trial court erred in refusing to issue a peremptory writ of mandamus directing the clerk to verify the sufficiency of an initiative petition for the rezoning of a tract of land within the City of Springfield because the act of verifying the sufficiency of an initiative petition is a non-discretionary, ministerial act in that (A) the Springfield city charter mandates that the clerk verify the sufficiency of all initiative petitions filed in the clerk's office; and (B) the citizens of Springfield have, through their charter, reserved the power to rezone land through the initiative process.

■ A writ of mandamus is appropriate only where it compels ministerial actions; it may not be utilized to compel the performance of a discretionary duty. *State ex rel. Schaefer v. Cleveland*, at 870[8, 9]. It is not a writ of right, *Anderson v. Smith*, 377

S.W.2d 554, 559[9] (Mo.App.1964), and its issuance lies in the sound judicial discretion of the court. *Id.* Before granting a writ of mandamus, however, the court should look to the public interest which may be concerned, and act in view of all the existing facts and with due regard to the consequences. *Anderson v. Smith*, 377 S.W.2d at 559[9]. The writ will be refused where, if granted, it would be unavailing, or where the act to be performed would be unlawful, for the court will not compel the performance of a vain or unlawful act. *Id.* If the proposed ordinance was void for any reason, that would be a complete defense to this action. We would not impose upon the City of Springfield the burden and expense of examining and certifying an initiative petition and submitting to its citizens for a vote an ordinance which would be of no effect if adopted. *See, id.*

■ Municipal charters are adopted by a vote of the citizens of a municipality. Mo. Const. Art. VI, § 19. Subject to the requirement that the charter be in harmony with and subject to the Constitution of Missouri and its laws in matters of general interest and statewide concern, the home rule charter is the city's organic law—its constitution. Mo. Const. Art. VI, § 19(a); *State ex rel. St. Louis Fire Fighters Assoc. Local No. 73 v. Stemmler*, 479 S.W.2d 456, 457[1] (Mo. banc 1972). If consistent with and subject to the constitution and laws of this state, charter provisions have the force and effect of enactments of the legislature. *Reynolds v. City of Independence*, 693 S.W.2d 129, 131[2] (Mo. App.1985).

■ Under our constitutional assumptions, all power derives from the people, who can delegate it to representative instruments which they create. *City of Eastlake v. Forest City Enterprises, Inc.*, 426 U.S. 668, 672, 96 S.Ct. 2358, 2361, 49 L.Ed.2d 132, 137 (1976). In establishing legislative bodies, the people can reserve to themselves power to deal directly with matters which might otherwise be assigned to the legislature. *Id.*

■ The provisions under which the people proceed in an initiative and referendum should be liberally construed. *State ex rel. Ford v. Brawley*, 514 S.W.2d 97, 99[2–4]

(Mo.App.1974). However, the general rule governing the interpretation and construction of charter provisions is that all parts thereof should be construed together. *Abernathy v. City of St. Louis*, 313 S.W.2d 717, 719[4] (Mo.1958). In construing the charter we must give effect to the intent of the framers. *State ex rel. Gragg v. Barrett*, 352 Mo. 1076, 180 S.W.2d 730, 731[1] (1944). While each provision should be construed so as to harmonize with the others, *id.*, where general and special provisions are in conflict the special provision will control so far as its scope demands, leaving the general provision to control in cases where the special provision does not apply. *Id.* With regard specifically to initiative and referendum, 42 Am.Jur.2d, Initiative and Referendum, § 9 is informative:

\* \* \* \* \* \*

A limitation on the field in which direct legislation, that is, initiative and referendum, is operative may be express or may arise by implication. Express limitations on the power of the people of a state appear in the constitution of the state; express limitations on the power of the people of a municipality may appear in the state constitution, the municipal charter, and in the general law of the state.

The courts will not hold that there is an implied limitation on the powers of initiative and referendum unless the language of the provisions establishing the powers clearly compels such an interpretation.

\* \* \* \* \* \*

Where the required procedure for a particular ordinance involves steps such as notice and hearing, in addition to normal legislative deliberations, such an ordinance is not subject to initiative and referendum.

Generally, a statute giving a municipal commission authority to act in a particular field does not bar the right of initiative of the people in that field unless it gives the commission powers independent of the powers of the city council. In line with this rule, where the city council's power to enact legislation on a subject is limited by a requirement that there be prior action by

a municipal commission, initiative is not available.

Here, relators contend that the clerk does not have discretion to review or not review an initiative petition for its sufficiency. Section 14.4 of the charter pertaining to the filing and certification of the petition provides, in pertinent part:

Within twenty days after a petition is filed, the city clerk *shall* determine whether each paper of the petition has a proper statement of the circulator and whether the petition is signed by a sufficient number of qualified electors.... After completing his examination of the petition, the city clerk shall certify the result thereof to the council at its next regular meeting. If he shall certify that the petition is insufficient, he shall set forth in his certificate the particulars in which it is defective and shall at once notify the person filing the petition of his findings. [Emphasis added.]

Under the terms of § 14.4 above, the clerk is given no discretion, and "shall" examine a petition for its sufficiency and certify the result thereof to the city council. Thus, subpart A of relators' point, contending that the clerk has no discretion to review or not review an initiative petition, is well taken.

The crucial question we must decide, however, is presented by subpart B of relators' point on appeal. That is, whether the citizens of Springfield have, through their charter, reserved to themselves the power to rezone land through the initiative process. If the citizens of Springfield have not, in their charter, reserved to themselves the power to enact zoning ordinances through the initiative process, then the proposed ordinance would be unlawful, the certification of the petition would serve no useful purpose, and mandamus would be properly refused.

The crux of relators' contention is that § 14.1 of the Springfield charter allows the initiative process in zoning matters. Section 14.1 is the general provision reserving to the citizens of Springfield the power to enact legislation through initiative and provides, in pertinent part:

The electors shall have power to propose any ordinance, except an ordinance appropriating money and to adopt or reject the same at the polls, such power being known as the initiative. Any initiated ordinance may be submitted to the council by a petition signed by qualified electors of the city equal in number to at least ten percent of the total number of persons voting at the last regular municipal election.

Further, § 14.6 of the charter, regarding the procedure to be followed upon the certification of an initiative petition, provides in pertinent part:

When an initiative petition has been certified as sufficient, the council shall proceed at once to consider the proposed ordinance, taking final action thereon not later than thirty days after certification.

If the council shall fail to pass an ordinance in the form proposed by the initiative petition, it shall after the final action thereon call a special election on the next date authorized by law for such election.... At such special or general municipal election, such ordinance shall be submitted without alteration to the vote of the electors of the City....

It is clear from the face of these provisions that zoning matters are not, by express terms, excluded from the initiative process.

Article XI of the Springfield charter, however, deals specifically with planning and zoning. Respondents argue that to allow zoning measures to be enacted through the initiative process would be inconsistent with the charter provisions dealing specifically with the enactment of zoning measures in that § 11.17 deals with zoning and provides, in pertinent part:

The city planning and zoning commission shall exercise the authority vested in a zoning commission by the State Zoning Enabling Acts. * * * The commission shall hear applications for amendments, modifications or revisions of the zoning ordinance and shall forward such applications to the council with its recommendations thereon. The recommendations of the commission shall not be binding on the council, which may approve or disapprove the commission findings; however, no general city plan, *or zoning ordinance*, or any modification, amendment or revisions

thereof, shall be considered by the council unless the same shall have been first submitted to the commission for its examination and recommendation. [Emphasis added.]

Thus, bearing in mind the rules we have enunciated regarding the interpretation and construction of municipal charters, the question becomes whether the citizens of Springfield, by the adoption of charter provisions pertaining specifically to initiative and zoning, have preempted zoning ordinances which have not been submitted to the commission for examination and recommendation from being enacted through the initiative process. Under the initiative process set out in § 14.6 of the charter, the council "shall proceed *at once to consider* the proposed ordinance, taking final action thereon not later than thirty days after certification." (Emphasis added.) However, § 11.17 of the charter requires that before zoning ordinances be considered by the council, the planning commission must first examine the ordinance and make a recommendation.

Here, there is an inherent conflict between §§ 11.17 and 14.6 when the ordinance proposed by initiative is a zoning ordinance which has not been submitted to the commission for its examination and recommendation, because there is no provision in the initiative process for the commission to examine the ordinance and make a recommendation, as required by § 11.17, before the city council considers the ordinance. This conflict is highlighted further by § 11.7(2) of the charter which provides that all rezoning of land should generally conform with the guidelines in the master plan and should be reviewed for consistency with the master plan. The master plan for the physical development of the city, and amendments thereto, are, under charter § 11.2(1), required to be prepared and recommended by the commission. The commission is also required, under §§ 11.2(5) & (6), to review and make recommendations with respect to proposed changes in the zoning ordinance and zoning map, and to hold public hearings on requests for rezoning and amendments to the zoning ordinance.

Therefore, to permit zoning measures to be enacted pursuant to the initiative process would circumvent the procedure set forth in the charter, providing for examination and recommendation by the commission.

A case involving a conflict between a general charter provision pertaining to initiative and a special charter provision relating to public works or improvements was addressed by our Supreme Court in *Baum v. St. Louis,* 343 Mo. 738, 123 S.W.2d 48 (1938). In *Baum,* plaintiff sought to propose by initiative an ordinance calling for an election on the proposition to issue public utility revenue bonds to pay for a municipal mass transportation system. *Id.,* 123 S.W.2d at 49[1–4]. The provision for ordinances to be proposed and adopted by initiative stated that the ordinances could be adopted at the polls, with the same effect as if adopted by the board of aldermen and approved by the mayor, subject to the provisions of the charter. *Id.* Section 1, article 22 of the charter provided that "no ordinance for public work or improvement of any kind, or repairs thereof, shall be adopted, unless prepared and recommended by the board of public service with an estimate of the cost endorsed thereon." *Id.* The court held that the enactment of an ordinance under the initiative provisions of a charter, for a public improvement which was not recommended by the Board of Public Service, would interrupt and destroy the scheme and purpose of § 1, article 22 as effectively as if such ordinance was adopted by the Board of Aldermen. *Id.,* 123 S.W.2d at 50. The court ruled therefore that these provisions applied to proposals under the initiative as well as to ordinances proposed by the Board of Aldermen, such ruling being in harmony with the charter provision that the initiative shall be exercised subject to the provisions of the charter. *Id.,* 123 S.W.2d at 51. The court stated that any other interpretation would defeat the very purpose of the charter. *Id.*

A similar situation was presented to our Supreme Court in *State ex rel. Powers v. Donohue,* 368 S.W.2d 432 (Mo. banc 1963), wherein an initiative petition was presented to the Board of Election Commissioners of St. Louis County seeking to place on the ballot an ordinance essentially repealing a zoning ordinance previously passed. The

Board of Election Commissioners refused to place the measure on the ballot, but the trial court issued a writ of mandamus requiring that it do so. The charter provisions at issue in *Donohue* reserved to the people the power of initiative and referendum for any ordinance except emergency measures. Among the types of ordinances defined in the charter as emergency measures were amendments to the zoning ordinance. In addition, the charter established a procedure for changes in zoning which required public hearings before the County Planning Commission after public notice and posting of signs, and a report from the Planning Director. Our Supreme Court held that a purported enactment of an amendment to the comprehensive zoning ordinance of St. Louis County, without compliance with the zoning provisions, would be unlawful and void. *Donohue*, at 439. While the charter provisions in *Donohue* expressly excluded zoning measures from the initiative process, we find *Donohue* to stand for the principle that where the charter establishes a procedure for the adoption of certain types of ordinances, that procedure may not be circumvented by use of an initiative petition. *See also, Rice v. Stoff*, 844 S.W.2d 529 (Mo. App.1992), *cert. denied sub nom. Carter v. City of St. Louis*, — U.S. —, 113 S.Ct. 3040, 125 L.Ed.2d 726 (1993) (Initiative not proper to propose ordinance providing for transformation of hospital to homeless shelter where initiative procedure would circumvent statute requiring public hearing on redevelopment projects.)

Relators attempt to distinguish *Baum* on the fact that the charter provided that the initiative shall be exercised "subject to the provisions of this charter," and no such similar language modifies the initiative provision in the Springfield charter. The modification of the initiative provision contained in *Baum*, however, is really nothing more than a statement of the rule of construction, recognized in Missouri, that conflicting provisions of a charter must be harmonized and reconciled so as to give effect to both in the light of the intent which has been expressed in the charter as a whole. *Stiers v. Vrooman*, 234 Mo.App. 161, 115 S.W.2d 84, 86[1] (1938). Thus, the rationale of the *Baum* decision, where the charter required steps to be taken

before certain types of ordinances could be enacted, applies equally here.

Relators argue that *Baum* and *Donohue* should not be followed, since *Donohue* relied on *Baum* and *Baum* relied heavily on *Hurst v. City of Burlingame*, 207 Cal. 134, 277 P. 308 (1929), which the California Supreme Court has since overruled. In *Hurst* the California Supreme Court held that statutes requiring notice and hearing to precede enactment of municipal zoning and land use ordinances applied to initiatives. In *Associated Home Builders v. City of Livermore*, 18 Cal.3d 582, 135 Cal.Rptr. 41, 557 P.2d 473 (1976), however, the California Supreme Court stated that *Hurst* erroneously contrived a conflict between state zoning statutes and the initiative law, essentially misperceiving legislative intent. *Associated Home Builders*, 135 Cal.Rptr. at 47, 557 P.2d at 479. The court also relied on a California constitutional provision which reserved initiative and referendum powers to the electors of each "county, city and county, city and town of the State," and which prohibited any legislative limitation or restriction on those powers. The court stated that legislation which permits council action but effectively bars initiative action may run afoul of that constitutional provision. *Id.*, 135 Cal.Rptr. at 47–48, 557 P.2d at 479–80[2].

*Associated Home Builders*, however, is distinguishable at least by the fact that there is no constitutional provision in Missouri, which we have found or to which we have been directed, as was present in *Associated Home Builders*, which would secure the initiative on behalf of municipal voters. In any event, we do not perceive the fact that *Hurst* was overruled in California as affecting the vitality of the *Baum* and *Donohue* cases of our Supreme Court. *Baum* and *Donohue* have not been overruled in Missouri, and as such they are controlling. Mo. Const. Art. V, § 2.

Accordingly, we conclude that the citizens of Springfield have reserved to themselves the power of initiative but have also required that zoning ordinances be submitted to the commission for examination and recommendation prior to consideration by the council.

Here, it is undisputed that the proposed ordinance was never submitted to the commission for its examination and recommendation. This being so, the council could not consider it. Thus, the power of initiative as to zoning ordinances was restricted by the citizens themselves to situations where the commission has examined the proposed ordinance and made its recommendation.

Respondents argue that to construe the charter provisions so as to allow zoning measures to be enacted through the initiative would conflict with state law, specifically § 89.060 R.S.Mo.1986. (All statutory references are to R.S.Mo.1986 unless otherwise noted.) Section 89.060 provides that the provisions of § 89.050 relative to public hearing and official notice shall apply to all changes or amendments to zoning regulations, restrictions, or boundaries. Section 89.050 provides, in pertinent part:

> ... no such regulation, restriction, or boundary shall become effective until after a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard. At least fifteen days' [sic] notice of the time and place of such hearing shall be published in an official paper or a paper of general circulation in such municipality.

Respondents argue, essentially, that to allow zoning to be enacted through the initiative provision of the Springfield charter would put that charter provision in conflict with state law.

Relators argue against this contention, relying mainly on *State ex rel. Hickman v. City Council of Kirksville*, 690 S.W.2d 799 (Mo. App.1985). In *Hickman*, the Kirksville City Council argued that zoning enabling statutes in § 89.010 *et seq.* had preempted zoning measures from the initiative process, citing *Donohue* in support. The Western District stated that "[n]othing in the [*Donohue*] holding purports to eliminate the initiative process from zoning issues. State passage of enabling laws allowing the cities to enact comprehensive zoning within their boundaries does not exempt council actions in that area from initiative by the people." *Hickman*, at 803[6]. The court also stated:

[I]n view of the United States Supreme Court case of *City of Eastlake v. Forest City Enterprises, Inc.*, 426 U.S. 668, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976), the vitality of the *Donohue* case may have been sapped. The *Eastlake* court held that use of a referendum in a zoning issue is not invalid on a procedural due process theory (i.e. lack of hearing and notice) because the people can reserve to themselves power to deal directly with matters which might otherwise be assigned to a legislative body. *Id.*

*Hickman* involved the City of Kirksville, a city of the third class which is not a charter city. As such, the citizens of Kirksville, in an effort to adopt zoning ordinances by initiative, were exercising powers granted by the state legislature. § 78.200. *Hickman* ruled that the power to adopt ordinances by initiative, granted by the state legislature to citizens of third class cities in § 78.200, was not precluded in zoning matters by the notice and hearing requirements of § 89.010 *et seq.*

Here, however, we are concerned with a charter city, and the power of initiative that the citizens of Springfield have reserved to themselves. As previously found, the citizens of Springfield, through their charter construed as a whole, did not reserve to themselves the power to adopt, through the initiative process, a zoning ordinance which has not been submitted to the commission for examination and recommendation. As such, it is not necessary for the resolution of this case to decide the question, raised by respondents, of whether § 89.010 *et seq.* preempts the adoption of zoning measures through initiative in a charter city.

To the extent, however, that *Hickman* suggests the holding of *Donohue* is no longer valid after *Eastlake*, we disagree, as the issues presented in *Eastlake* and *Donohue* were not the same. The *Donohue* holding, disallowing initiative in zoning matters, was not based on an application of the due process clause of United States Constitution, but rather it was based, as here, on a construction of the charter's initiative provision in conjunction with other provisions of the same charter. *Eastlake* dealt with the applicability of the United States Constitution to a

referendum provision authorized by the Ohio Constitution. The Ohio constitutional provision reserved the power of initiative and referendum to the people of each municipality within the state "on all questions which such municipalities may now or hereafter be authorized to control by legislative action." *Eastlake,* 426 U.S. at 673, 96 S.Ct. at 2362. The *Eastlake* municipal charter provided that where the City Council approved of any change in existing land uses, such change would not be effective until approved by a 55% favorable vote of the qualified electors of the City of Eastlake. *Id.,* 426 U.S. at 668–72 n. 1, 96 S.Ct. at 2360–61 n. 1. The charter provision was challenged on the basis that it was an unlawful delegation of power to the people. The Ohio Supreme Court held that the United States Constitution would not allow amendments to zoning ordinances by popular initiative and/or referendum since it was an unlawful delegation of power violative of federal constitutional guarantees because the voters were given no standards to guide their decision. The United States Supreme Court reversed, holding that the charter provision was not an unlawful delegation of power, and that the Ohio Constitution reserved the rezoning decision in that case to the people of the City of Eastlake. *Id.,* 426 U.S. at 679–82, 96 S.Ct. at 2365. The court also refuted a due process challenge, stating that if the substantive result of the referendum is considered to be unreasonable then the zoning restriction is open to challenge in state court where the scope of the available remedy would be determined as a matter of state law, as well as under Fourteenth Amendment standards. *Id.,* 426 U.S. at 674–79, 96 S.Ct. at 2363–64.

Here, as was the case in *Donohue,* we are not construing the United States Constitution or the Missouri Constitution, but are considering the compatibility of a provision of the Springfield charter, which allows ordinances to be enacted through initiative, with other provisions of that charter relating specifically to the adoption of zoning ordinances and providing specific procedures for the adoption of zoning ordinances. Nor is there any contention that the initiative provision here is an unconstitutional delegation of power or that it violates any other constitutional

provision. Therefore, under the circumstances of this case, we conclude that the reasoning of *Donohue,* that a charter's provisions for notice and hearing on proposed zoning ordinances may not be circumvented by the adoption of zoning measures through the initiative process, is alive and controlling.

The judgment of the trial court is affirmed.

CARL R. GAERTNER and
KATHIANNE KNAUP CRANE, Special Judges, concur.