CITY OF SPRINGFIELD,
Missouri, Appellant,

v.

Lon and Debora GOFF, Respondents,

and

Dorothy and Genevieve Haydon,
Intervenors–Respondents.

No. 78350.

Supreme Court of Missouri,
En Banc.

March 26, 1996.

Rehearing Denied April 23, 1996.

Nancy Yendes, Assistant City Attorney, Springfield, for Appellant.

James A. Burt, Springfield, for Respondents.

ROBERTSON, Judge.

Section 89.060, RSMo 1994, permits thirty percent of the landowners affected by a zoning change to file a petition protesting the change to the legislative body of a municipality. In that event, the zoning ordinance does not take effect unless two-thirds of the mem-bers of the municipality's legislative body vote in favor of the change. The City of Springfield, Missouri, a charter city, adopted charter section 11.18. The charter provision recognizes as valid a protest petition signed by ten percent of the affected landowners and requires that three-quarters of the members of the Springfield city council vote in favor of a change to override the protest petition. This case presents two issues: First, whether section 89.060 violates article VI, section 22 of the Missouri Constitution. Second, whether Springfield's ordinance is valid given the constitutional requirement that charter cities may exercise only such powers as are "not limited or denied ... by statute...." Mo. Const. art. VI, § 19(a).

The trial court found that the ordinance conflicted with section 89.060 and, thereby, violated section 19(a). Springfield appealed. We have jurisdiction. Art. V, § 3. The judgment of the trial court is affirmed.

I.

The parties stipulate the relevant facts.

Respondents Dorothy and Genevieve Haydon asked the City to rezone a parcel of land to permit a bed and breakfast in an area previously zoned for single family residences. More than ten percent, but less than thirty percent, of the affected landowners opposed the zoning change and filed a petition with the city council before the council considered the zoning change request. When the zoning change did not receive a three-quarter's majority, the council declared that the request for a change in zoning failed.

Respondents Lon and Debora Goff sought a change in zoning to permit a small motel in place of the car wash or self-service storage units previously approved. Affected landowners filed a timely protest petition with the city council, which met the requirements of charter section 11.18, but not section 89.060. The council received the petition and voted 5–3 in favor of the change. Because the zoning change did not receive the three-quarter's majority required by section 11.18 following the filing of a protest, the council declared the zoning-change request defeated.

Springfield filed a declaratory judgment action against the Goffs, seeking a declaration of the validity of section 11.18. The Goffs filed a motion for summary judgment. The trial court permitted the Haydons to intervene as defendants and entered judgment in favor of the Goffs and Haydons. The trial court's order declared that section 11.18 of the Springfield charter conflicted with section 89.060 in violation of article VI, section 19(a). Springfield appealed.

## II.

Section 89.060, RSMo 1994, relates to changes in zoning regulations and provides:

Such regulations, restrictions, and boundaries may from time to time be amended, supplemented, changed, modified or repealed. In case, however, of a protest against such change duly signed and acknowledged by the owners of *thirty percent or more,* either of the areas of the land (exclusive of streets and alleys) included in such proposed change or within an area determined by lines drawn parallel to and one hundred and eighty-five feet distant from the boundaries of the district proposed to be changed, such amendment shall not become effective except by the favorable vote of *two-thirds* of all the members of the legislative body of such municipality....

(Emphasis added.) Prior to 1988, section 89.060 required only ten percent of the affected landowners to sign a protest petition and required a three-quarter's vote of the members of the municipal legislative body to override the protest. *See* § 89.060, RSMo 1986. Until 1988, Springfield, had no independent charter provision concerning zoning protest petitions. Instead, its charter reflected the language and requirements of section 89.060.

Following the 1988 amendments, Springfield initially adopted zoning protest petition requirements identical to those contained in the new section 89.060. However, on April 4, 1989, Springfield's voters approved an amendment to the city's charter, adopting section 11.18, which restored the right of ten percent of affected landowners to file a valid protest against a proposed zoning change, and required a three-quarter's majority of the city council to override a valid protest petition and to approve a zoning change. Section 11.18 provides:

Notwithstanding any other law to the contrary, whenever a valid protest petition is filed in opposition to the rezoning of land, the zoning change shall not become effective except by the favorable vote of *three fourths* of all the members of the City Council. In order for a protest petition to be valid against the change, it shall be duly signed and acknowledged by the owners of *ten percent* or more, either of the areas of the land (exclusive of streets and alleys) included in such proposed change, or within an area determined by lines drawn parallel to and one hundred and eighty-five feet distant from the boundaries of the land proposed to be changed. In the event it is determined that this provision is invalid, then the city council shall have the authority to determine the percentage for a protest petition and to require more than a simple majority of the full council to rezone property when a valid protest petition is filed in opposition to the rezoning.

(Emphasis added.)

### A.

■ Springfield first urges that section 89.060 violates article VI, section 22. That constitutional provision states: "No law shall be enacted creating or fixing the powers, duties or compensation of any municipal office or employment for any city ... adopting its own charter...." Springfield argues that any attempt by the legislature to establish procedures that cities must follow to effect zoning changes is "an attempt to define the powers of municipal officers."

In *State ex rel. Sprague v. City of St. Joseph,* 549 S.W.2d 873, 879 (Mo. banc 1977), this Court struck down a statute, section 341.040, RSMo 1969, as applied to charter cities, that purported to create a board of plumbers, impose board duties upon the city's chairman of the board of health, require the mayor to name and the council to approve two members of the board, set terms and compensation for board members, pre-

scribe duties of board members, and create the office of plumbing inspector. *Sprague*, 549 S.W.2d at 875. The Court determined that the provisions of the statute created and fixed the powers, duties and compensation of the municipal offices of plumbing examiner and plumbing inspector and that article VI, section 22, prohibited the General Assembly from applying that statute to charter cities.

In *State ex rel. Burke v. Cervantes*, 423 S.W.2d 791 (Mo. banc 1968), the Court considered the validity of statutes that purported to require the mayor of St. Louis, a charter city, to assume the additional duty of appointing a firemen's arbitration board. The Court found that both statutes, as applied to constitutional charter cities, were unconstitutional and void because they imposed duties upon a municipal officer and created a municipal office.

■ The constitutional authority to cities to adopt and amend a charter, Mo. Const. art. VI, §§ 19–22, intends to grant cities broad authority to tailor a form of government that its citizens believe will best serve their interests. *State ex rel. St. Louis Fire Fighters Ass'n. Local No. 73, AFL–CIO v. Stemmler*, 479 S.W.2d 456, 458–59 (Mo. banc 1972). While the power of charter cities is not without boundaries—article VI, section 19(a), requires that charter city ordinances be consistent with the constitution and "not limited or denied" by state statutes—the General Assembly is expressly prohibited from dictating the types of municipal offices and employment charter cities must establish or the powers or compensation of officers and employees of charter cities. Art. VI, § 22.

■ Springfield argues that the General Assembly's establishment of the majority by which the members of the city council must vote to approve a zoning change over a protest petition is tantamount to fixing the powers of a municipal office. We do not read section 22 so broadly. Instead, by its plain language, section 22 is limited to prohibiting the General Assembly from enacting state laws prescribing the individual offices of a charter city and the duties and compensation of the officers holding those offices. Section 22 applies only to individual offices. In other words, the General Assembly may not tell the officers of a charter city what they must do; it may, however, limit the powers a charter city may exercise through its officers. Consistent with this understanding of section 22, the constitution does not prohibit the legislature from establishing procedures by which charter cities may make substantive determinations regarding the uses of private property through zoning regulation.

Section 89.060 does not violate article VI, section 22. It neither creates a municipal office or employment, nor fixes the powers, duties or compensation of a municipal office or employment. Rather, section 89.060 places limitations upon the exercise of powers by the governing bodies of municipalities. The statute, a provision of the Missouri Zoning Enabling Act, section 89.010, *et seq.*, RSMo 1994, requires legislative bodies to follow certain procedures for rezoning land in the face of a valid protest petition, i.e., one signed by thirty percent of affected landowners. Section 89.060 is constitutional.

### B.

■ The second issue is whether the adoption of section 11.18 of Springfield's charter purports to grant the city a power denied it by state statute in violation of article VI, section 19(a). A charter provision that conflicts with a state statute is void. *State ex rel. Hannah v. City of St. Charles*, 676 S.W.2d 508, 513 (Mo. banc 1984). A conflict exists where a charter "permits what the statute prohibits" or "prohibits what the statute permits." *Cape Motor Lodge, Inc. v. City of Cape Girardeau*, 706 S.W.2d 208, 211 (Mo. banc 1986).

■ Sections 89.010 to 89.140 constitute the sole source of authority for cities in zoning matters. *City of Moline Acres v. Heidbreder*, 367 S.W.2d 568, 572 (Mo. banc 1963). Consequently, a city must conform to the terms of the state's grant of authority when exercising its powers relating to zoning. *McCarty v. City of Kansas City*, 671 S.W.2d 790, 793 (Mo.App.1984). A city follows the terms of the grant of zoning authority by adhering to all of the procedures set forth in sections 89.050 to 89.070. *State ex rel. Nigro v. Kansas City*, 325 Mo. 95, 27 S.W.2d 1030, 1032 (1930).

Section 89.060 permits a protest against a zoning change by the owners of "thirty percent or more" of the affected property. Section 11.18 reduces the statutory percentage to ten percent. Section 89.060 does not permit a protest by less than thirty percent of the owners.

Section 89.060 also requires that upon the filing of a valid protest petition a zoning change must be approved by two-thirds of a municipality's legislative body. Section 11.18 requires a three-quarter's super-majority of the Springfield city council to approve a zoning change over a protest petition. Section 89.060 does not permit approval by more than two-thirds of a legislative body.

In permitting protests by a lower percentage of owners and requiring a greater percentage of votes by members of the city council to override protests, section 11.18 allows what section 89.060 prohibits. Therefore, section 11.18 violates article VI, section 19(a) of the constitution. Section 11.18 is void.

### III.

The judgment of the trial court is affirmed.

All concur.