STATE of Missouri, ex rel.
Karen CHASTAIN, et
al., Appellants,

v.

CITY OF KANSAS CITY, Missouri,
et al., Respondents.

No. WD 70100.

Missouri Court of Appeals,
Western District.

May 12, 2009.

Application for Transfer to Supreme Court
Denied June 23, 2009.

Application for Transfer Denied
Sept. 1, 2009.

Valerie A. Chastain, Esq., Bedford, VA, for appellant.

Douglas McMillan, Esq., Galen P. Beaufort, Esq., George S. Diegel, Esq., Kansas City, Jon M. Krebbs, Esq., Liberty and Steven B. Salmon, Esq., Gladstone, MO, for respondent.

Before DIVISION ONE: ALOK AHUJA, Presiding Judge, HAROLD L. LOWENSTEIN, Judge and THOMAS H. NEWTON, Chief Judge.

HAROLD L. LOWENSTEIN, Judge.

## I. OVERVIEW

This is a suit filed under section 527.010, RSMo 2000 et seq., to have article VII, section 704 of the Kansas City Charter declared unconstitutional. This appeal pivots on a single issue: whether a municipal charter provision permitting a city council to repeal any voter initiated municipal ordinance is in violation of the Missouri Constitution. The appellant in this case is a

committee formed from a group of Kansas City residents that organized and obtained a successful initiative petition and received a majority vote of the electorate to have the proceeds of Kansas City's three-eighths cent transportation sales tax, used for the city's bus transit system, extended by twenty-five years, with the proceeds used instead to fund a light rail system designed to run through Kansas City, from approximately the Kansas City Zoo to the airport.

## II. Facts

Kansas City is a constitutional charter city organized under article VI, section 19 of the Missouri Constitution. The citizens of Kansas City voted to adopt the Kansas City Charter ("Charter"), which permits the city's electors to propose an ordinance through an initiative process. The initiative process first requires the city's electors to create a petition containing the proposed ordinance. Kansas City, Mo. Charter art. VII, § 701(2006). The petitioners must then obtain a requisite number of signatures from the city's electorate, as set forth in the Charter, and submit the signed petition to the city clerk. *Id.* Thereafter, the city council ("the Council") may vote to pass the ordinance, but if the Council fails to pass it, or passes it in different form, the Charter allows the petitioners to require the Council to submit the proposed ordinance to the electorate for a vote at the next available municipal or state election. *Id.* at §§ 702–03.

In the summer of 2006, a group of five Kansas City residents formed a committee ("the Committee") and undertook the beginning stages of the initiative process. The Committee created a petition containing a proposed ordinance that called for extending an existing three-eighths cent transportation sales tax, set to expire on March 31, 2009, for twenty-five years, with the proceeds of the tax to be used solely for constructing, operating and maintaining a light rail transportation system in Kansas City. Following the procedures set forth in the Charter, the Committee obtained the requisite number of signatures and submitted the petition to the city clerk. However, the Council failed to pass the proposed light rail ordinance. Acting under sections 702–03 of the Charter, the Committee required the Council to present the proposed ordinance to the electorate at the next available election. The Council complied, and the ordinance was placed on the November 7, 2006 ballot. The city's electorate voted to adopt the light rail ordinance.

One year and one day later, on November 8, 2007, nine members of the Council and the Mayor voted to repeal the light rail ordinance under the authority section 704 of the Charter, which provides in pertinent part:

> No ordinance adopted at the polls under the initiative shall be amended or repealed by the Council within one year of such adoption except by the affirmative vote of nine (9) members thereof. Thereafter such ordinance may be amended or repealed as any other ordinance.

In repealing the ordinance pursuant to section 704, the Council noted that studies conducted to determine the viability of the light rail plan indicated that the light rail could not be constructed, maintained, and operated within the budget outlined in the proposed ordinance.

On January 16, 2008, the Committee filed a lawsuit against the City of Kansas City ("the City"), naming members of the Council, various members of the Kansas City Board of Parks and Recreation, and the Mayor as defendants, in their individual and official capacities. The Committee

sought a declaratory judgment and injunctive relief.

Specifically, the Committee requested that the court declare section 704 of the Charter unconstitutional or, in the alternative, declare that section 704, as applied, is unconstitutional to the extent that the Council and the Mayor acted in bad faith and with the intent to restrict the rights conferred by the initiative provisions of article III, sections 49–53, of the Missouri Constitution. In conjunction with a declaration that section 704 is unconstitutional, the Committee sought a writ of mandamus from the trial court ordering the Council and the Mayor to implement the light rail ordinance. The Committee also asked the trial court to declare that the light rail ordinance is not in violation of article III, section 51 or article X, sections 16–24, of the Missouri Constitution, not in conflict with sections 412, 1001, 1003, or 1004 of the Charter, and not in violation of section 82.240, RSMo.2000.

Additionally, the Committee sought injunctions prohibiting the Council from placing any issue on the April 2008 ballot, or any ballot thereafter, relating to the extension of the three-eighths cent transportation sales tax for Kansas City's bus transit system. As alleged in the complaint, the Committee was anticipating the aforementioned tax proposal by the Council, and if the Council proposed such a tax, the Committee argued, it would conflict with the tax plan outlined in the light rail ordinance, which called for extending the three-eighths cent transportation sales tax for the proposed light rail transportation system. For further relief, the Committee also requested $10,000 in compensatory damages, $200,000 in punitive damages, and attorneys' fees.

On January 24, 2008, the Council passed the ordinance anticipated in the Committee's lawsuit. The ordinance placed an issue on the April 2008 ballot proposing the continuance of the three-eighths cent transportation sales tax for Kansas City's bus transit system. In response, the Committee amended its original lawsuit, adding various members of the Board of Elections as defendants. The Committee asked the court to grant a temporary restraining order and a preliminary injunction against all the defendants in an attempt to prevent any action related to placing the newly enacted bus tax before the City's electorate for vote on the April 2008 ballot, or any time thereafter. However, the trial court denied the Committee's request for a temporary restraining order and a preliminary injunction, allowing the defendants to proceed with the newly enacted bus tax and the April 2008 election. The court reasoned that, "[i]f later there is a finding that the City was incorrect, the election can be set aside."

Thereafter, the City filed a motion to dismiss, asking the trial court to dismiss all of the Committee's remaining claims for a declaratory judgment, injunctive relief, damages, and attorneys' fees. The City alleged that, because section 704 of the Charter is constitutional, the Committee is not entitled to a declaratory judgment or damages, and thus, the lawsuit failed to state a claim upon which relief can be granted. The Committee filed a responsive motion, arguing that the City's motion to dismiss should be denied because the lawsuit invoked substantive principles of law that entitle the Committee to a declaratory judgment. The Committee also argued that the City's motion failed to offer suggestions in support of dismissing the Committee's claims for injunctive relief, and thus, the City's motion should be denied with respect to those claims.

The trial court ultimately granted the City's motion and dismissed all of the claims contained in the Committee's law-

suit. In its judgment, the court held: (1) section 704 of the Charter is constitutional; (2) the same process that allowed the Committee's proposed light rail ordinance and subsequent vote on it also allowed the Council to repeal the ordinance; (3) the Council followed the required steps to repeal the light rail ordinance and violated no existing law or public policy in doing so; (4) the individual claims against the defendants are barred by official immunity and legislative immunity; and (5) all actions taken by the defendants were done in their official capacity. The Committee requested that the trial court amend the judgment by including specific findings and rulings with respect to their claim that the Mayor and members of the Council acted in bad faith and, in addition, amend the judgment by declaring whether the light rail ordinance violated article III, section 51 or article X, sections 16–24, of the Missouri Constitution, sections 412, 1001, 1003, or 1004 of the Charter, and section 82.240, RSMo.2000. The trial court overruled the Committee's motion to amend the judgment.

■ The Committee appealed the trial court's ruling to the Supreme Court of Missouri, which declined review and transferred the Committee's appeal to this court. Under article V, section III, of the Missouri Constitution, this court has general appellate jurisdiction in all cases not within the exclusive jurisdiction of the Missouri Supreme Court. This appeal involves a challenge to the constitutional validity of a *municipal ordinance,* and as such, does not involve any matter reserved for the exclusive jurisdiction of the Supreme Court of Missouri under article V, section III, of the Missouri Constitution. *City of Pagedale v. Murphy,* 142 S.W.3d 775, 777 (Mo.App.2004); *G.Q. Gentlemen's Quarters, Inc. v. City of Lake Ozark, Mo.,* 83 S.W.3d 98, 100 (Mo.App.2002).

## II. DISCUSSION

■ In the first point, the Committee contends that the trial court erred in dismissing its claim for a declaratory judgment because section 704 of the Charter, which authorizes City to repeal any voter initiated ordinance, is unconstitutional by violating article III, section 49, and article VI, section 19(a), of the Missouri Constitution.

■ This court reviews a trial court's grant of a motion to dismiss *de novo. Crocker v. Crocker,* 261 S.W.3d 724, 726 (Mo.App.2008). A motion to dismiss for failure to state a claim upon which relief can be granted is solely a test of the adequacy of the plaintiff's petition. *S & P Props., Inc. v. City of University City,* 178 S.W.3d 579, 581 (Mo.App.2005). All facts alleged in the petition are treated as true, and the petition is construed favorably to the plaintiff to determine whether the averments invoke substantive principles of law which entitle the plaintiff to declaratory relief. *State ex rel. Petti, v. Goodwin–Raftery,* 190 S.W.3d 501, 504 (Mo.App. 2006). This court tests the sufficiency of a petition for a declaratory judgment by asking whether the petition entitles the plaintiff to a declaration of rights or status on the facts pleaded. *Id.* The petition must set forth facts, not mere conclusions, which support the allegations and demonstrate a justiciable controversy. *Id.*

No provision exists in the Missouri Constitution explicitly prohibiting or limiting the power of a municipality to repeal or interfere with a voter initiated municipal ordinance. However, according to the Committee, section 704 of the Charter violates the Missouri Constitution because it grants authority to interfere with the voter initiative process. The Committee reaches this conclusion by drawing inferences from two provisions in the Missouri Constitu-

tion, article III, section 49, and article VI, section 19(a).

Article VI, Section 19(a) of the Missouri Constitution states that a charter city "shall have all powers which the general assembly of the state of Missouri has authority to confer upon any city, provided such powers are consistent with the constitution of this state and are not limited or denied either by the charter so adopted or by statute." The Committee argues that article VI, section 19(a), sets limits on the powers of a municipality. Under this provision, they argue, the authority of a municipality is limited to those powers possessed by and conferred upon the city by the general assembly. Article III, section 49 states, "[t]he people reserve power to propose and enact or reject laws and amendments to the constitution by the initiative, *independent of the general assembly* ..." Mo. Const. art. III, sec. 49. (Emphasis added.) Under article III, section 49, the Committee argues that the *general assembly* is prohibited from interfering with voter initiated state laws. The Committee draws as an inference from the two preceding constitutional provisions that section 704 of the Charter is unconstitutional. In effect, the Committee reasons, because a charter city's authority is limited to powers possessed by and conferred upon the city by the general assembly, and the general assembly does not have the power under the constitution to interfere with voter initiated state laws, a charter provision granting a city authority to interfere with voter initiated municipal ordinances is, likewise, unconstitutional. Committee's argument asks this court to find a relationship between the powers of a municipality under article VI, section 19(a), of the Missouri Constitution, and the limit on the *general assembly's* power to interfere with initiated *state* laws contained in article III, section 49, of the Missouri Constitution.

The powers of a municipality under the Missouri Constitution have been defined as follows. Municipal charters are a charter city's organic law, its constitution. Mo. Const. art. VI, § 19(a); *State ex rel. Childress v. Anderson*, 865 S.W.2d 384, 387 (Mo.App.1993). A municipal charter is adopted by a vote of the citizens of a municipality. Mo. Const. art. VI, § 19; *State ex rel. Petti*, 190 S.W.3d at 505. In granting a city the ability to adopt and amend a charter, the Missouri Constitution reflects a city's " 'broad authority to tailor a form of government that its citizens believe will best serve their interest.' " *State ex rel. Petti*, 190 S.W.3d at 505 (quoting *City of Springfield v. Goff*, 918 S.W.2d 786, 789 (Mo. banc 1996)). The *only limitation* of a municipality's authority to tailor its government is that the charter must be consistent with and subject to the Missouri Constitution and state laws. Mo. Const. art. VI, § 19(a); *State ex rel. Childress*, 865 S.W.2d at 387. "If consistent with and subject to the constitution and laws of this state, charter provisions have the force and effect of enactments of the legislature." *State ex rel. Petti*, 190 S.W.3d at 505. " 'In construing city charter provisions, courts seek the intent of its drafters as gleaned from the language used.' " *Skaggs v. City of Kansas City*, 264 S.W.3d 694, 698 (Mo.App.2008) (citing *Client Servs. Inc. v. City of St. Charles*, 182 S.W.3d 718, 724 (Mo.App.2006)).

The power created by a municipal charter derives from the citizens of the municipality. *State ex rel. Childress*, 865 S.W.2d at 387. The citizens, alone, delegate their power to representative instruments such as the municipal charter. *Id.* While article III, section 49, of the Missouri Constitution sets forth the power reserved to the people of Missouri to propose and enact *state laws* by initiative, the

powers reserved to a municipality with respect to enacting *municipal ordinances* by initiative are defined and limited by the charter. *State ex rel. Petti*, 190 S.W.3d at 505.

In *State ex rel. Powers v. Donohue*, the Missouri Supreme Court held that a municipal charter provision prohibiting zoning from being the subject of a voter initiative or referendum is valid and enforceable. 368 S.W.2d 432 (Mo. banc 1963). In *State ex rel. Powers*, property owners filed a writ of mandamus asking the trial court to force members of the board of election commissioners to place an initiative petition on the ballot to repeal an amendment to the St. Louis County zoning ordinances, approved by the St. Louis County Council, that rezoned a 225 acre tract of land from industrial classification to single family classification. *Id.* at 433–34. The trial court granted the writ and ordered that the proposed ordinance be placed on the ballot. *Id.* On appeal, the Missouri Supreme Court reversed the trial court's grant, ruling that the St. Louis County Charter expressly reserved zoning matters to the St. Louis County Council, and thus, an amendatory zoning ordinance could not properly be subject to the initiative or referendum process. *Id.* at 438–39. In a later case, *State ex rel. Petti*, the court relied on the holding of *State ex rel. Powers* to uphold a provision in the Florissant city charter that contained an express prohibition against use of the initiative or referendum process for an amendment to the zoning ordinance. 190 S.W.3d at 506.

The Committee attempts to distinguish the holdings in *State ex rel. Powers* and *State ex rel. Petti* from this case on the following principle: while a municipal charter may properly limit the *subject matter* or *use* of the initiative process, such as zoning for instance, a charter cannot completely prohibit the voter initiative process or delegate the unfettered authority to overturn any voter initiated municipal ordinance. Contrary to the Committee's suggestion, however, *State ex rel. Powers* and *State ex rel. Petti* stand for the broader proposition that a municipal charter *may* contain provisions that interfere with the initiative process at the municipal level, and such interference is not contrary to the Missouri Constitution and state laws. *State ex rel. Petti*, 190 S.W.3d at 506. The rationale behind the decisions in both cases rests on the notion that the authority granted to municipalities by the Missouri Constitution to adopt and amend a municipal charter reflects a city's expansive "authority to tailor a form of government that its citizens believe will best serve their interest[s]." *State ex rel. Petti*, 190 S.W.3d at 505 (quoting *City of Springfield v. Goff*, 918 S.W.2d 786, 789 (Mo. banc 1996)).

 Moreover, as suggested by *State ex rel. Petti*, article III, section 49, of the Missouri Constitution *does not* grant citizens of this state an unlimited right to initiate laws at the municipal level. 190 S.W.3d at 505. "There is no unlimited right to the use of the initiative or referendum process." *Id.* at 508. Article III, section 49, provides the citizens of this state the power to propose and enact or reject *state laws* and amendments to the Missouri Constitution by the initiative process and makes no mention of voter initiated ordinances at the municipal level. "[T]here is no constitutional provision in Missouri . . . which would secure the initiative on behalf of *municipal voters*." *State ex rel. Childress*, 865 S.W.2d at 390 (emphasis added). Because there is no constitutional right to initiate laws at the municipal level and citizens of a municipality possess broad authority to tailor municipal charters as they see fit, the Missouri Constitution is not violated by charter provi-

sions, such as section 704, that permit interference with the initiative process at the municipal level.

The will of the citizens of Kansas City is set forth in the Kansas City Charter. By adopting the Charter, the citizens of Kansas City chose to tailor a form of government as they saw fit. In so doing, the citizens reserved the power to initiate ordinances but also granted the Council power to repeal any initiated ordinance. The Council's power to repeal initiated ordinances derives directly from the authority delegated to it by the citizens of Kansas City. Under the rationale implemented in *State ex rel. Powers and State ex rel. Petti,* the Charter's delegation of power complies with the Missouri Constitution and state laws and, therefore, is valid and enforceable. The power that the citizens of Kansas City *expressly* reserved to Council to repeal voter initiated ordinances is not in violation of article III, section 49 and article VI, section 19(a), of the Missouri Constitution. The Committee points to no provision in the Missouri Constitution, the laws of this state, nor to case law supporting a conclusion to the contrary. As a result, the trial court properly determined that section 704 of the Kansas City Charter is constitutional.

The Committee's argument that section 704 is inconsistent with state law, impinges on rights given under the Missouri Constitution, and usurps the citizens' power to directly determine public policy through the ballot box, *State ex rel. Voss v. Davis,* 418 S.W.2d 163 (Mo.1967), might have merit had the very same citizens of Kansas City not adopted the language of section 704 into the Charter. This point is denied.

■■■■ The Committee presents three other points of error.[1] However, the remaining three points clearly rely on a ruling that section 704 of the Kansas City Charter violates the Missouri Constitution, rendering certain acts of the City ineffective; specifically, the City's repeal of the light rail ordinance and implementation of the bus transit ordinance. Due to this court's ruling that section 704 is constitutional, the actions taken by the City were effective and consistent with the Kansas City Charter and the Missouri Constitution. This court is unable to grant effective relief on the Committee's subsequent points, as the light rail ordinance was properly repealed by the City. The remaining three issues are moot. "The mootness of a controversy is a threshold question in any appellate review of that controversy." *State ex rel. Chastain v. City of Kansas City,* 968 S.W.2d 232, 237 (Mo.App.1998). Regarding justiciability, an issue is moot if a judgment rendered has no practical effect upon a controversy. *Id.* This court does not decide questions of law disconnected from the granting of actual relief.

---

1. The second point states that the trial court erred in dismissing its claim that section 704 is unconstitutional to the extent that the Council and Mayor Funkhouser acted in bad faith and with the intent to evade the initiative provisions of the Missouri Constitution when they repealed the light rail ordinance and enacted the bus transit ordinance.

The third point states that the trial court erred in denying the Committee's request for injunctive relief and a temporary restraining order to prevent the defendants from placing the bus transit ordinance on the April 2008 ballot. The trial court held that the April 2008 election results could be set aside if the electorate voted in favor of the bus transit ordinance and there was a later finding by the court that the City was incorrect.

The fourth point states that the trial court erred in failing to render a judgment as to three other declaratory judgments requested by the Committee, namely, that the light rail ordinance is: not in violation of article III, section 51 or article X, sections 16–24, of the Missouri Constitution, not in conflict with sections 412, 1001, 1003, or 1004 of the Charter, and not in violation of section 82.240 RSMo (2000).

*Id.* "Because mootness implicates the justiciability of a case, the court may dismiss a case for mootness *sua sponte.*" *Id.* When an appellate decision is unnecessary or it is impossible for the appellate court to grant effectual relief, the appeal is moot and generally should be dismissed. *Id.*

The judgment of the trial court is affirmed.

All Concur.