

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| ANGELA ANDERSON, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | WD76927 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | June 10, 2014 |
| UNION ELECTRIC COMPANY, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Morgan County, Missouri**
**The Honorable Kenneth M. Hayden, Judge**

**Before Division III:** Mark D. Pfeiffer, Presiding Judge, and
Lisa White Hardwick and Anthony Rex Gabbert, Judges

Angela Anderson ("Anderson") appeals the judgment of the Circuit Court of Morgan County, Missouri ("trial court"), dismissing her petition for failure to state a claim and denying her motion to amend her petition. The trial court dismissed Anderson's petition, finding that Union Electric Company, d/b/a Ameren Missouri ("UE"), was immune from the present lawsuit pursuant to the dictates of Missouri's Recreational Use Act, §§ 537.345-537.348, RSMo ("RUA"). On appeal, Anderson claims that the RUA does not apply to UE, because, as her petition alleged, UE charged a "use fee" for lake residents to "use and enjoy" the lake through their docks. Anderson also alleges that the "land" on which the accident giving rise to this case

occurred is further excepted from the RUA's protection because it is "non-covered land" as defined in the Act. Finding that the alleged "use fee" removes this case from the provisions of the RUA, we reverse and remand.

**Factual and Procedural Background**

On July 4, 2012, Alexandra Anderson (age fourteen) and her brother, Brayden Anderson (age eight), were playing in the water near the dock[1] of their family's lakefront home at the Lake of the Ozarks in Morgan County, Missouri. While the children played, stray electrical current from the dock entered the water, shocked the children and caused such muscular discoordination that the children could not stay above the surface of the water, and they drowned.

Angela Anderson, the children's mother, filed a wrongful death suit against UE, who owns the Lake of the Ozarks, alleging that UE's negligence was the cause of the children's deaths. Besides merely owning the Lake of the Ozarks, Anderson's petition alleged, UE charged an annual user fee and/or a lump sum use fee as a "condition or predicate for placement, maintenance, use and/or enjoyment of docks on the Lake of the Ozarks." The petition also alleged that UE charged enforcement fees to compel compliance with dock permitting requirements:

> Said permitting requirements included provisions for certain requirements for electric power extensions on docks on the Lake of the Ozarks. At all times

---

[1] Anderson's petition alleges that the children were "swimming in the vicinity of the Anderson dock when they encountered stray electrical current." Anderson's proposed amended petition, which the trial court disallowed by denying leave to amend, alleged, in addition, that "Brayden['s] and Alexandra's entry to the Defendant's property was made, by and through and upon the aforementioned dock." In determining the propriety of a trial court's grant of a motion to dismiss, "we give the pleadings their broadest intendment and most liberal construction, and we accord the petition 'all reasonable inferences deducible from the facts stated.'" *Fugate v. Jackson Hewitt, Inc.*, 347 S.W.3d 81, 85 (Mo. App. W.D. 2011) (quoting *Lakeridge Enters., Inc. v. Knox*, 311 S.W.3d 268, 271 (Mo. App. W.D. 2010)). *See also City of Branson v. Hotels.com, LP*, 396 S.W.3d 378, 382 (Mo. App. S.D. 2013) ("[A] court takes a plaintiff's averments as true and liberally grants plaintiff all reasonable inferences."). Therefore, under *either* version of Anderson's petition, the reasonable inference is that the children accessed the water in which they were playing from the Anderson dock. At oral argument, counsel for UE conceded that this was a reasonable inference from the facts alleged in Anderson's original pleading.

2

relevant Defendant [UE] maintained authority to revoke dock permits for any dock Defendant deemed, *inter alia,* "unsafe."

Finally, the petition alleged that UE should have known that adequate electrical protection of docks located on its lake required ground fault interrupt devices to be placed at or above the seawall of each dock in order to prevent the hazards of electrical shock or electrocution in the event of a short circuit or other electrical fault.

UE filed a motion to dismiss Anderson's petition, alleging that UE was immune under the RUA in that it allowed the Andersons to enter its lake for recreational purposes without charge. The trial court granted the motion to dismiss. This appeal follows.

## Standard of Review

We review a trial court's grant of a motion to dismiss *de novo*. *Chastain v. City of Kansas City*, 289 S.W.3d 759, 763 (Mo. App. W.D. 2009). "A motion to dismiss for failure to state a claim upon which relief can be granted is solely a test of the adequacy of the plaintiff's petition." *Id.* We examine the plaintiff's petition, accepting as true all facts alleged and construing them liberally in favor of the plaintiff to determine whether she has stated a claim upon which relief can be granted. *Lynch v. Lynch*, 260 S.W.3d 834, 836 (Mo. banc 2008).

## Analysis

Anderson's first point on appeal is that the trial court erred in dismissing her petition because UE charged residents a user fee for accessing the lake from their docks, and therefore, the immunity granted by the RUA does not apply to UE.

Section 537.346 provides:

Except as provided in sections 537.345 to 537.348, and section 537.351, an owner of land owes no duty of care to any person who enters on the land **without charge** to keep his land safe for recreational use or to give any general specific warning with respect to any natural or artificial condition, structure, or personal property thereon.

3

(Emphasis added.)

Section 537.347 provides:

Except as provided in sections 537.345 to 537.348, an owner of land who directly or indirectly invites or permits any person to enter his or her land **for recreational use, without charge,** whether or not the land is posted, or who directly or indirectly invites or permits any person to enter his or her land for recreational use in compliance with a state-administered recreational access program, does not thereby:

(1) Extend any assurance that the premises are safe for any purpose;

(2) Confer upon such person the status of an invitee, or any other status requiring of the owner a duty of special or reasonable care;

(3) Assume responsibility for or incur liability for any injury to such person or property caused by any natural or artificial condition, structure or personal property on the premises; or

(4) Assume responsibility for any damage or injury to any other person or property caused by an act or omission of such person.

(Emphasis added.) "Land" is defined to be "all real property, land and water, and all structures, fixtures, equipment and machinery hereon." § 537.345(2). "Charge" is defined as "the admission price **or fee** asked by an owner of land or an invitation or permission without price or fee to use land for recreational purposes when such invitation or permission is given for the purpose of sales promotion, advertising or public goodwill in fostering business purposes." § 537.345(1) (emphasis added).

As stated above, in its motion to dismiss, UE claimed that it was immune under sections 537.346 and 537.347 because it allowed the Andersons to enter its lake for recreational purposes without charge. The motion claimed that Anderson "conceded" that her family entered the lake for recreational purposes without charge. The trial court accepted UE's argument and dismissed the petition citing *Lonergan v. May*, 53 S.W.3d 122, 129 (Mo. App. W.D. 2001).

4

Anderson did not, however, concede that her family used the Lake of the Ozarks for recreational purposes without charge. Her petition alleged that all persons wanting to use their own docks to access the Lake of the Ozarks had to pay either an annual user fee or a lump sum user fee to do so. In addition, the petition alleged that dock owners were required to have dock permits and to comply with all permitting requirements or face "enforcement fees."

The Anderson family was not charged an admission price each time they entered the lake from their dock. However, section 537.345(1) defines "charge" as "the admission price **or fee** asked by an owner of land." (Emphasis added.) Anderson argues that the user fees her family paid for the construction, use, and enjoyment of their family dock, on and around which the Anderson children were playing when they were killed, are sufficient to remove the Andersons' use of the lake from the provisions of sections 537.346 and 537.347, such that UE is not immune from liability under the RUA. We agree.

User fees were apparently not at issue in the *Lonergan* case that was cited by the trial court in its judgment dismissing the petition. In fact, in *Lonergan*, we expressly noted that, at that time, dock permits from UE were issued free of charge, *Lonergan*, 53 S.W.3d at 125, and stated, "[S]ection 537.346 of our statute[] relieves the landowner of any duty to keep his land safe **so long as the owner does not charge a user fee**." *Id.* at 127 (emphasis added). Here, to the contrary, Anderson alleged that UE charged them a user fee; the user fees were a condition of the Anderson family's use and enjoyment of their dock, which, not so coincidentally, was adjacent to and sitting on top of, the lake. Thus, any "use" of the dock necessarily involved "accessing" the lake. This allegation, which we must assume to be true at this juncture of the case, is sufficient to distinguish *Lonergan* and remove UE from the protection of the RUA.[2] The

---

[2] UE cites to *Foster v. St. Louis County*, 239 S.W.3d 599 (Mo. banc 2007), and argues that the dock permit fee was not the fee for the Andersons' "admission" into the lake. *Foster* is distinguishable from this case. In *Foster*,

trial court's judgment does not address Anderson's allegation that the user fees were charged, nor does it attempt to reconcile the "user fee" allegation with the limited holding in *Lonergan*. Because we conclude that the "user fee" charged by UE removes UE from the immunity protection of the RUA, the trial court's judgment is erroneous.[3]

Point I is granted.

Anderson's second point on appeal is that the trial court erred in denying her motion to amend her petition. Because we conclude that her original petition should not have been dismissed for failure to state a claim, Anderson may decide to stand on her initial petition upon remand. However, if Anderson still desires to amend her petition upon remand, the trial court is directed to entertain the motion pursuant to Rule 55.33, and to grant leave to amend if it determines that "justice so requires." And given the early stage of the proceedings in this case at the time Anderson made her motion to amend the petition, this court can see no reason why her motion should not have been granted in the interest of justice. In any event, at this point, Anderson's second point on appeal is denied as moot.

---

the plaintiff fell into a hole and was injured while he was playing football at a park. *Id.* at 600. Foster argued that the RUA did not render St. Louis County, who owned the park, immune from liability because it charged some park patrons a fee in exchange for their use of the park's *picnic areas*; Foster himself paid no fee whatsoever. *Id.* at 602. The Missouri Supreme Court concluded that the County's act of charging *some* patrons of the park a fee did not preclude application of the RUA because *Foster paid no fee* and was injured in a part of the park that was *never subject to fees*. *Id.* In contrast, here: (1) the petition alleges that the Andersons were charged a fee for the use and enjoyment of their docks; and (2) the reasonable inference from the petition is that the children were using and enjoying the dock as a means to access the part of the lake near their dock when they were killed.

[3] Since Anderson alleged that user fees were charged, taking UE outside of the protections of the RUA, it is not necessary to decide whether the "non-covered land" exception to the RUA applies to the portion of the Lake of the Ozarks surrounding the shoreline and in which the docks are located. This was an issue briefed by the parties and was the basis for this court's decision in *Lonergan*. However, because the issue raised by the appellants in *Lonergan* was the "primary commercial use" of the Lake of the Ozarks, and not the "recreational" purpose of the lake, no issue was raised as to section 537.348(3)(d)'s reference to the "**owner's** recreation," and that language was therefore not addressed. *Lonergan v. May*, 53 S.W.3d 122 (Mo. App. W.D. 2001). Here, however, Anderson contests the "owner's recreation[al]" use of the lake, claiming that UE, the owner, does not use the lake primarily, or at all, for recreational purposes. Without deciding the issue, we note that Anderson may have an additional basis upon which to avoid application of the immunity protection of the RUA.

**Conclusion**

We reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

_____
Mark D. Pfeiffer, Presiding Judge

Lisa White Hardwick and Anthony Rex Gabbert, Judges, concur.